IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| vs. | * | Case No. 1:21-cr-00028-APM-2 |
| | * | |
| **DONOVAN CROWL** | * | |
| **Defendant** | * | |
| | * | |

ooOoo

**DONOVAN CROWL'S REPLY TO GOVERNMENT'S OPPOSITION**

**I.    KEY RELEVANT FACTS REGARDING MR. CROWL'S PARTICIPATION IN THE EVENTS OF JANUARY 6, 2021 REMAIN THE SAME AND SUPPORT PRETRIAL RELEASE**

- **Mr. Crowl did not damage any property**.

- **Mr. Crowl did not injure anyone.**

- **Mr. Crowl did not bring any firearms or other weapons to the Capitol**

That is the truth. And is the primary reason why Mr. Crowl does not present a danger to society or a risk of flight.

Those key facts have been admitted by the United States in an email to defense counsel on March 12, 2021 and repeated in various hearings in this case. As such, they are 'admissions' by a party opponent, pursuant to FED. R. EVID. 801(d)(2), and are not as the Government contends an attempt by Mr. Crowl to "wholly minimize[ ] his conduct." Gov Opp (ECF 103) at 16).

Other key facts, which this Court has looked to in making the individualized decision to detain or release the defendants in this case are also not disputed.

- **Mr. Crowl did not participate in any organizational or leadership activities and Did Not Use Encrypted Communication Applications**

    o    No Signal chats

    o    No Zello communications

    o    No planning calls

The Government's reliance on a several Facebook message asking him to help a couple of guys who wanted to travel to DC is not evidence of organizational or leadership activities. All the messages to Mr. Crowl are from the same person, a childhood friend of Mr. Crowl's and fellow Marine veteran. As the texts show, the child-hood friend reached out to Mr. Crowl on behalf of two other Marines. The friend closes by referencing the Marine motto Semper Fi. This was not about leadership in the charged conspiracy. This was about one Marine honoring his duty to his friend, another Marine.[1]

- **Mr. Crowl did not attend a training session in December 2020**

Significantly, the Affidavit in Support of the Complaint and the Second Superseding Indictment allege as a key Overt Act in the conspiracy that Mr. Crowl attended a training session in December 2020.[2] The Government's lengthy opposition to Mr. Crowl's Motion for pretrial release does not address this glaring error, which was pointed out by Mr. Crowl in his bail review

---

[1] "Marines live by a set of enduring core values that form the bedrock of our character. These values guide our actions and bolster our resolve. Honor, courage and commitment lead us to victory over the physical, mental and moral battles faced during combat, or while serving in our communities on behalf of our Nation. These are the values that ensure every fight in current and future battles supports our common moral cause." https://www.marines.com/life-as-a-marine/standards/values.html

[2] "On December 12-13, 2020, CROWL attended a training camp in North Carolina." Second Superseding Indictment (ECF 77) at ¶ 33.

2

motion. (ECF 92 at 6).  Multiple contemporary text messages produced in discovery reflect that Mr. Crowl was in Ohio working on those dates.

- **Mr. Crowl is not a member of the "Oath Keepers"**

The only oath that Mr. Crowl has taken in his life is the oath to defend and protect our country and our Constitution, which he took as a 17-year old when he joined the United States Marine Corps.  His service is worth repeating because it is a proud achievement in his life and follows the sacrifice of every generation of his family dating back to Bunker Hill.  His entry into the Capitol on January 6, did not dishonor that oath.  He helped others who were hurt on that day; he did not injure or damage anything or anyone.  He did not enter to seek to disrupt the Congress and in fact, could not have done so as the Congress had suspended its functions at 2:20 p.m., a full 20 minutes before he entered the Capitol.

There is not a single text message or other statement by Mr. Crowl that the Government has presented which supports its claim that he intended to obstruct the work of Congress. He left the Capitol voluntarily within minutes after entry.[3]

He has not paid any dues and has not submitted a written application to the Oath Keepers as other defendants in this case have.  While he wore an Oath Keeper patch on January 6, he did so as a non-member, part of a security operation, which he believed he was carrying out.

Significantly, in its discussion of the Oath Keepers, the Government seeks to taint Mr. Crowl with conduct that he did not commit or otherwise adopt.  This passage from its Opposition exemplifies the flaw in much of the Government's memorandum:

---

[3] While the Government has yet to produce images from the CCTV cameras located inside the Capitol which would indicate when Mr. Crowl left the Capitol, it is believed that he was not within the Capitol for more than ½ hour.

> Many of the individuals in Defendant Crowl's group, including Defendant Crowl, wore patches and clothing with logos and insignia of an organization known as the "Oath Keepers." A close-up view of the badges on the vest of one of these individuals, seen just under the Oath Keepers emblem on his shirt, displays the Oath Keepers motto, "Not On Our Watch." The badge also says, "I don't believe in anything. I'm just here for the violence."

ECF 103 at 3. The Government goes so far as to include an image of the badge that references violence. *Id*. at 4. Yet, nowhere in the Memorandum does the Government point out to the Court that Mr. Crowl did not wear the badge that states "I'm just here for the violence."

Similarly, the Government spends a considerable amount of time in its memorandum referencing comments made by Person One, who has been identified as Stuart Rhodes the Oath Keepers' founder. However, nowhere in its many references does the government allege that Mr. Crowl was privy to any of the comments which the Government attributes to Rhodes, who has not even been charged as a codefendant in this case.

Mr. Crowl did not go hunting for Antifa as the Government references in citing a facebook message sent by Mr. Crowl. While that text is provocative, the relevance of the text to the issues before the Court is that on January 6, Mr. Crowl stated his plan was to go "the W.H. in the am and early afternoon." He makes no mention of storming the Capitol to impede the counting of the votes in that contemporaneous account. Moreover, Mr. Caldwell, whom the Court has released was the one who first referenced hunting Antifa. Antifa is an apparent preoccupation by some, including unfortunately then-President Donald Trump and even then-Attorney General Barr. However, a preoccupation with Anfifa is not an element of or relevant to any offense charged in this case or other issue before this Court.

- **Mr. Crowl did not obstruct justice**
    - did not destroy evidence
    - did not delete texts, social media accounts or posts
    - did not discard clothing

In fact, Mr. Crowl assisted authorities in locating his cell phone.  After he turned himself in to Ohio authorities, federal law enforcement authorities were unable to locate his cell phone and a Task Force Officer went to the detention facility where Mr. Crowl was being held to ask whether a particular phone was Mr. Crowl's.  While he could have remained silent or lied as many detainees do, Mr. Crowl explained to the officer that the phone in the officer's possession was Ms. Watkins' not his.  Mr. Crowl further explained to the officer that he indeed had a cell phone, which "probably fell out in Montana's car when they were getting out at the police station."  FBI 302, Bates Crowl #000018.  As a result of Mr. Crowl's information, agents were able to locate his phone.  The Government has since extracted all the information from Mr. Crowl's cell phone.

Moreover, the Government's attempt to claim that Mr. Crowl is a risk of flight because he

> ditched an identifying piece of his battle gear at the home of an acquaintance and traveled to the home of co-defendant Caldwell who directed him not to communicate over the phone and to double back on the highway to avoid being followed

is ludicrous. The location where Mr. Crowl left his clothing was the place where he has been living in for nearly a year, a barn converted to accommodate a living space.  It is difficult to believe that the Government is not aware of that fact as they searched the location with the permission of the owner, a woman who has been a close friend of Mr. Crowl for nearly a dozen years.  The location is the address that Mr. Crowl gave to the Pretrial Services Officer in Ohio.  It is the location where

Mr. Crowl also left the rest of his "stuff" to include his clothes, his carpentry tools, and his cats because that is where he was living.

It is quizzical that the Government is making the argument that because Mr. Caldwell, whom the Court has released pretrial, gave Mr. Crowl instructions to be evasive, it is Mr. Crowl who presents a risk of flight rather than the person giving the instructions.

The argument that Mr. Crowl was prepared to engage in guerilla warfare along the lines of the Vietcong is frankly insulting given the fact that Mr. Crowl is the son and nephew of Vietnam War veterans. Whatever crazy talk Ms. Watkins was engaged in by referencing a bug out plan is belied by the reality of events. Neither Ms. Watkins nor Mr. Crowl went anywhere but to the home of Mr. Caldwell to avoid the media attention, which was hounding them and their relatives. Notably, when they learned that they were being sought for questioning by the FBI, Ms. Watkins and Mr. Crowl did not head for the hills. They promptly returned home and turned themselves in to local Ohio authorities.

- **Mr. Crowl turned himself in to authorities**

In sum, Mr. Crowl is not a threat to society and is not a risk of flight.

## II. MR. CROWL'S MEDICAL CONDITIONS IS A COMPELLING REASON FOR RELEASE UNDER 18 U.S.C. § 3142(i)

Moreover, in addition to all the facts and arguments he is receiving no medical treatment for melanoma. That in itself is a basis for granting his pretrial release under 18 U.S.C. § 3142(i) which provides that a "judicial officer may . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or *for another*

6

*compelling reason*." 18 U.S.C. 3142(i) (emphasis added). As the Court is well aware, a number of judges in this district have granted release under § 3142(i) during the pandemic. For someone like Mr. Crowl, the lack of treatment he is receiving coupled with the health risks associated with the pandemic are sufficient independent grounds under § 3142(i) to grant release.

On every measure that the Court has used to release some defendants and detain others, Mr. Crowl's conduct and life tips in favor of release.

### III.   THE BAIL REFORM ACT

As set out in Mr. Crowl's Motion for Reconsideration of Detention Order, the only charged offense that triggers a detention hearing is the Section 1361 offense. But the failure of the Government to show that Mr. Crowl caused any damage to the Capitol negates § 1361 as basis for detention because it fails to satisfy the second prong of 18 U.S.C. § 3142(f)(1)(A), which requires that the offense carry a statutory maximum penalty of 10 years' imprisonment. If the property damage under § 1361 does not exceed $1000, the offense would not meet the second prong.

The Government's recent argument that the Court should not consider the damage valuation is wrong. *See Kaley v. United States*, 571 U.S. 320, 349 (2014):

> in the bail context – the pretrial determination that is perhaps the closest analogue to the pretrial restraint of assets at issue here – we allow judicial inquiries into the underlying merits of the indicted charges, without concern about intruding into the province of the grand jury. An indictment charging sufficiently serious crimes gives rise to a rebuttable presumption that a defendant is not eligible for pretrial release. *See* 18 U.S.C. §§ 3142(e)(3) and (f). Such a defendant is nonetheless entitled to an evidentiary hearing at which he may contest (among other things) "the weight of the evidence against" him, § 3142(g)(2). Yet no one would say that the district court encroached on the grand jury's role if the court determined that it would not authorize pretrial detention because of the weakness of the prosecution's case. *See, e.g., United States v. Hurtado*, 779 F.2d

>1467, 1479–1480 (11ᵗʰ Cir. 1985) (recognizing that in considering the "weight of the evidence" to decide whether the presumption is rebutted, "it may well be necessary to open up the issue of probable cause since that too is a question of evidentiary weight"). That makes sense, because the district court has considered the underlying merits of the charges based on different information and for a different purpose than the grand jury did. Such a defendant would be granted pretrial release, but would still have to show up for trial.

Perhaps recognizing the weakness of its argument on the § 1361 damages, the Government now seeks to argue that § 1361 also supports detention in the first instance because it is a "crime of violence" as the term is defined in 18 U.S.C. § 3156(a)(4)(A). This argument is legally incorrect. Section 3156(a) (4)(A) defines "crime of violence" as

>(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another

In *Curtis Johnson*, the Supreme Court defined "physical force" as "violent force – that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. . . .And, it continued, "[e]ven tangible property can be injured without using violent force. For example, a vintage car can be injured by a mere scratch, and a collector's stamp can be injured by tearing it gently." *United States v. Curtis Johnson*, 559 U.S. 133, 140 (2010). But § 1361 can be violated without use of physical force. *See United States v. Bowen,* 936 F.3d 1091, 1104 (10ᵗʰ Cir. 2019) (" We agree with Bowen that property "crimes of violence" under § 924(c)(3)(A) are those that include "violent force," *Curtis Johnson*, 559 U.S. at 140, not merely those that "injur[e] ... property," *United States v. Hill* (Hill II), 890 F.3d 51, 58 (2d Cir. 2018). And we easily conclude that the act of spray-painting another's car does not entail the use of violent force.").

Thus, under the categorical approach § 1361 can never qualify as a "crime of violence"

because "depredation" of property is an indivisible element that can be satisfied by non-violent means- such as spray painting.[4]

Under all the facts of this case, § 1361 does not give rise to an offense subject to detention in the first instance under the Bail Reform Act.

## CONCLUSION

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'

*Berger v. United States*, 295 U.S. 78, 88 (1935).

With all due respect to the Government, which finds itself trying prosecute a large number of cases for true acts of violence and depredation of property, Mr. Crowl is not one of the persons who hurt any law enforcement officer or other person on January 6, 2021. He did not damage any property. He had no intent to overthrow the United States Government or impede the work of the United States Congress and did not conspire to do so. He should be judged on his conduct not on the conduct of others.

---

[4] Several cases show § 1361 offenses can be prosecuted for acts that do not involve violent means. *See, e.g., U.S. v. Albertini,* 472 U.S. 675, 677 (1985)(noting that events underlying the case involved a § 1361 prosecution for destroying documents by pouring animal blood on them; *United States v. Mastropierro*, 931 F.2d 905, 906 (D.C. Cir. 1991) (§ 1361 prosecution for defacing the US Capitol during a demonstration for the homeless by throwing human blood on the Capitol).

For all these reasons, and any that may become apparent at a hearing on this matter, Mr. Crowl respectfully submits that the Government has failed to meet its burden by clear and convincing evidence that he presents a risk of danger to society and by a preponderance of the evidence that he is a risk of flight. Wherefore, he respectfully requests that this Honorable Court release him on high intensity supervision.

Respectfully submitted,

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 26th day of March, 2021 on all counsel of record via ECF.

/s/ Carmen D. Hernandez
**Carmen D. Hernandez**