**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **vs.** | * | **Case No. 1:21-cr-00028-2 (APM)** |
| | * | |
| **DONOVAN CROWL**, | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

**DONOVAN CROWL REPLY TO GOVERNMENT'S OMNIBUS**
**OPPOSITION TO HIS MOTION TO DISMISS THE § 1512(C)(2) COUNTS**

Donovan Crowl, by his undersigned counsel, hereby respectfully submits the following reply to the Government's Omnibus Opposition (ECF 313) to his Motion to Dismiss Counts One and Two for Failure to State an Offense and for Vagueness (ECF 288).

**INTRODUCTION**

On its face and as applied to Mr. Crowl, 18 U.S.C. § 1512(c)(2) is so vague that it fails to give him fair notice and allows arbitrary enforcement of the law in violation of the Due Process Clause. In its Omnibus Opposition (ECF 313), the government does not cite a single case that even comes close to the factual or legal issues present in this case or that overrule Circuit and Supreme Court precedent. Its arguments therefore lack merit.

Section 1512(c)(2) is a catchall provision that prohibits "otherwise" obstructing, influencing or impeding any official proceeding when done "corruptly." It was enacted by Congress in 2002 in the aftermath of the Enron and other financial scandals. Nothing in the structure or text of §1512(c)(2), its statutory history, or its judicial gloss provided Mr. Crowl fair notice that if he

1

entered the United States Capitol without a weapon, without assaulting anyone or damaging any property,  he would be committing a violation of § 1512(c)(2), a federal felony that subjects him to a maximum sentence of 20 years' imprisonment.[1]  More specifically, "corruptly" obstructing, influencing or impeding" an official proceeding does not at all clearly encompass entering the Capitol for 25 minutes which is, by way of contrast, a potential violation of 18 U.S.C. § 1752(a)(1), a misdemeanor offense charged in Count Four.  By contrast, entering or remaining inside the Capitol, while carrying a "deadly or dangerous weapon or firearm" or where the offense results "in significant bodily injury injury" is a felony in violation of § 1752(b), carries a statutory maximum of ten years).

Notably, the Indictment does not allege that Mr. Crowl acted "corruptly" in any fashion within the commonly understood or judicially sanctioned meaning of the term.  Indeed, by the time Mr. Crowl is alleged to have entered the Capitol at 2:40 p.m., both the House and the Senate were in recess.[2]

---

[1]  The Fifth Superseding Indictment (ECF 328) alleges in ¶¶ 141, 142, 144 ("About a minute later, *Crowl*, Watkins, Sandra Parker, Young, Steele, Kelly Meggs, Connie Meggs, Harrelson, Hackett, Dolan, Moerschel, Berry forcibly entered the Capitol"); ¶¶ 145, 152 ("At 2:45 p.m. and afterward, *Crowl*, Watkins, Sandra Parker, Young, Steele, and Isaacs joined the mob in pushing against a line of riot police officers guarding the hallway connecting the Rotunda to the Senate"); ¶ 161 ("At 3:05 p.m., *Crowl*, Watkins, Sandra Parker, Young, and Steele helped Isaacs out of the Capitol") (emphasis added).  Significantly, the government has not produced any CCTV video associated with ¶ 152; it has produced a public source video alleged to represent the event described in  ¶ 152.  The unverified public source video purports to show that the person alleged to be Mr. Crowl was dozens of persons away from any law enforcement officer, did not come in personal or eye contact with any officer, and his presence in the hallway lasted about 1 minute.

[2]  *See* U.S. Senate, Committee on Homeland Security & Governmental Affairs & Committee on Rules & Administration, 117th Congress (2021),  "Examining the U.S. Capitol Attack," at 25, (https://www.hsgac.senate.gov/imo/media/doc/HSGAC&RulesFullReport_ExaminingU.S.CapitolAttack.pdf).

> At 2:13 p.m., two minutes after rioters breached the building, the Senate went into recess. . . .The House declared a brief recess at 2:18 p.m.

To be sure,  Mr. Crowl denies that he "forcibly entered" the United States Capitol.  CCTV videos produced by the government in discovery show that the person alleged by the government to be Mr. Crowl entered the East Door of the Capitol through an opened door, along with many other persons, at around 2:40 p.m.  The CCTV videos show that the East Door opens out and persons, unknown to Mr. Crowl, opened the door by pushing an ordinary fire-safety push bar.[3]  The government has not alleged that the persons, who opened the doors were known to Mr. Crowl.  At the time of Mr. Crowl's alleged entry, the video does not show Mr. Crowl "forcibly" pushing anyone, assaulting any police officer, destroying any property or removing any barricades.  *See, e.g., United States v. Munchel,* 991 F.3d 1273, 1286 (D.C. Cir. 2021).[4]  Nonetheless, solely for purposes of his motion to dismiss, Mr. Crowl does not dispute the allegations in the Indictment.

The lack of fair notice and the government's arbitrary enforcement of § 1512(c)(2) in its prosecution of Mr. Crowl are clear.  Prior to the instant prosecutions for the events on January 6, 2021, the Department of Justice ("DOJ") has never charged any person, who has participated in a demonstration within the United States Capitol with felony obstruction in violation of § 1512(c).  As the Court well knows, on a regular basis, demonstrations take place at the United States Capitol.  Congressional hearings are disrupted, suspended and delayed by the conduct of Americans, who come to the Capitol, alone or in combination with others, to make their voices heard and in the process speak out, disrupt, sit-in, and protest congressional hearings.  Scenes of hearings being

---

[3]  The persons who pushed open the door appeared to be wearing street wear clothing, some with American flags or "MAGA" references; none appeared to be wearing Oath Keeper patches.

[4]  Defendants did not "assault any police officers or remove any barricades in order to breach Capitol security. . . .To go inside, defendants walked through an open door."  *Munchel*, 991 F.3d at 1286.

interrupted, while protestors are arrested and escorted out of the Capitol are common scenes on C-SPAN and other news shows.  Yet, not one of those persons who have interrupted and delayed Congressional proceedings, have been prosecuted under § 1512(c)(2) or any other felony obstruction statute.  Instead, as a norm, the government charges misdemeanor violations, dismisses cases, or enters into deferred prosecution agreements with persons arrested for disrupting congressional hearings.[5]

Section 1512 is titled "Tampering with a witness, victim, or an informant."  It explicitly prohibits attempts to tamper with a witness, documents and other evidence in various explicit ways.  Every case cited by the government in its Omnibus Opposition involves allegations of evidence tampering – either destruction or falsification of documents, making false statements or suborning others to do the same.  That is the core behavior made criminal by § 1512, known as the .  That core behavior is consistent with the legislative history.[6]  More specifically, § 1512(c)(2) was enacted to contend with corporate fraud and accounting scandals in the aftermath of the Enron scandals.[7]  Section 1512(c)(2) provides no hint that it goes beyond the core behavior of § 1512 to reach the conduct of a person, who enters the United States Capitol as part of a political demonstration.

It requires a long stretch to use the term "otherwise" to remake § 1512 from a statute that

---

[5] Federal felony prosecutions of person who commit violent offenses within the Capitol are of course prosecuted.  *See, e.g.*, *United States v. Weston*, 98-cr-00357 (murder of fed officer in violation of 18 U.S.C. § 1114).  However, § 1512(c)(2) has not be used to prosecute persons like Mr. Crowl, who is not alleged to have assaulted anyone, damaged any property, or brought a weapon into the Capitol.

[6] "The Victim and Witness Protection Act of 1982 created a new provision, § 1512, which prohibits various forms of witness tampering, including many activities that were formerly prohibited by §§ 1503 and 1505." *United States v. Poindexter,* 951 F.2d 369, 382 (D.C. Cir. 1991).

[7] *See* The Sarbanes-Oxley Act of 2002, Pub. L. 107-204.

explicitly prohibits tampering with evidence in some form to a statute that criminalizes political demonstrations.  Defined so broadly, "otherwise" is unrelated to the statutory text and legislative history and thus provides no limiting principle.  No court has ever held that a person who participates in a demonstration, no matter how large or disorderly, violates § 1512(c)(2).

Moreover, this Court is not writing on a clean slate.  In *United States v. Poindexter*, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") found that the term "corruptly" in a nearly identical obstruction provision is unconstitutionally vague when applied to a charge that the defendant "corruptly" obstructed a congressional proceeding.  Likewise, in *Yates v. United States*, the Supreme Court, in a prosecution under an anti-shredding statute also aimed at corporate fraud enacted at the same time as §1512(c)(2), held that the term "otherwise" cannot be interpreted to include allegations of obstruction unrelated to the failure to record or preserve evidence.

Free speech and associational rights protected by the First Amendment are also implicated by the government's novel application of the obstruction statute.  The allegations in Count One of the indictment against Mr. Crowl involve non-violent conduct of a political nature.  Count One is replete with references to the political activities of the defendants and other persons named but not charged, including then-President Donald Trump.[8]  Specifically as to Mr. Crowl, he is alleged to

---

[8] *See, e.g.,* Fifth Superseding Indictment (ECF 328), Count One.  Stewart Rhodes, who is reportedly the head and founder of the Oath Keepers, is alleged to have posted a message on the Oath Keepers website "encouraging Oath Keeper members . . . to go to Washington, D.C., for the events of January 5-6, 2021, stating:

> It is CRITICAL that all patriots who can be in DC get to DC to stand tall in support of President Trump's fight to defeat the enemies foreign and domestic who are attempting a coup, through the massive vote fraud and related attacks on our Republic. We Oath Keepers are both honor-bound and eager to be there in strength

have stayed within the United States Capitol for approximately 25 minutes; while there he assisted at least one person exit the Capitol.[9]  While inside the Capitol, Mr. Crowl is not alleged to have personally assaulted or injured anyone, damaged any property, possessed any weapons, or otherwise destroyed any evidence.  In that light, the Court should construe the statute to avoid the serious constitutional problems that would arise were § 1512(c)(2) to be applied to Mr. Crowl's non-violent acts of political speech.

In its Omnibus Opposition (ECF 313), the government does not meaningfully distinguish any of the authorities cited by Mr. Crowl concerning the vagueness doctrine, the First Amendment, the rule of lenity and the novel construction principle.  Binding precedent makes clear that Mr. Crowl cannot be held liable under a new enlargement of a criminal statute retroactively applied solely to him and a select group of defendants.  As the government does not limit its § 1512(c)(2) charges in any legally meaningful manner, does not allege that Mr. Crowl or others charged with him impaired or tampered with evidence or testimony, and alleges that Mr. Crowl acted "corruptly" under a definition that the D.C. Circuit has found unconstitutionally vague the charges under § 1512(c)(2) must be dismissed.

---

to do our part.  (p 5, ¶ 12).

Other references to political events are also contained in the Indictment:

An event colloquially referred to as the 'Million MAGA March' occurred in Washington, D.C., on November 14, 2020. A similar event occurred in Washington, D.C., on December 12, 2020.  (p 12, n.6)

[9]  *See* Footnote 1, *supra*.

In sum, the prosecution of Mr. Crowl under § 1512(c)(2) being pursued by the government does not merely violate Mr. Crowl's rights to the Due Process of Law. It has a chilling effect on all of us. Today, this novel application of § 1512(c)(2) threatens Mr. Crowl with decades in a federal prison for nonviolent political conduct. Last year, President Trump threatened years of prison for Americans who protested incidents of police brutality and those who sought to bring down statues of slave owners and confederate generals. In coming years, environmental activists, those seeking to protect women's reproductive rights, or those advocating for the preservation of voting rights may be threatened with the same severe penalties, if they too use non-violent means to petition Congress.

**ARGUMENT**

**I.     18 U.S.C. § 1512.  Tampering with a witness, victim, or an informant**

> . . .
>
> (c) Whoever corruptly–
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

Section 1512, enacted as part of *The Victim and Witness Protection Act of 1982* "prohibits various forms of witness tampering."  *United States v. Poindexter*, 951 F.2d 369, 382 (D.C. Cir. 1991).  In 2002, in the aftermath of the Enron and other corporate fraud scandals, Congress added § 1512(c) as part of the Sarbanes-Oxley Act.  Section 1512(c) is titled  "the Corporate Fraud Accountability Act of 2002."[10]

Section 1512(c) is "a broad ban on evidence-spoliation."  *Yates v. United States*, 574 U.S. 528, 541 (2015).  In the nearly 20 years that § 1512(c)(2) has been on the books, every prosecution brought by the United States under this subsection has involved allegations that the *actus reus* of the crime involved tampering with testimonial or other evidence, namely by lying, falsifying or tampering with a witness or evidence or suborning another person to do the same.

Nothing in the legislative history supports a reading of § 1512(c)(2) that would interpret the term "otherwise obstructs, influences, or impedes any official proceeding" to include a political

---

[10]  Public Law 107-204, Title XI, Section 1101 ("This title may be cited as the "Corporate Fraud Accountability Act of 2002"),  attached as Ex.  1.

demonstration, even if that demonstration involved a large group of people, some of whom were disorderly and violent.  In its Omnibus Response, the government does not cite a single passage of legislative history that would support the use of § 1512(c)(2) to prosecute political demonstrators.

## II.   The Government Has Not Distinguished the Dc Circuit's *Poindexter* Decision Which Controls the Resolution of Mr.  Crowl's Motion to Dismiss the Section 1512(c)(2) Counts

The D.C. Circuit's decision in *Poindexter* controls the resolution of this case.  *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir.1991), *cert. denied*, 506 U.S. 1021 (1992).  None of the government's arguments seeking to distinguish *Poindexter* are well-founded.  *Poindexter* has not been overturned by the D.C. Circuit and is not distinguishable.

Just as Mr.  Crowl, Poindexter challenged the application of an obstruction statute (18 U.S.C. § 1505) on the ground that use of the term "corruptly" rendered the statute unconstitutionally vague as applied to this conduct".[11]  The text of § 1505 and § 1512(c)(2) are identical, in all material respects.  Both subsections proscribe the same *actus reus* when done "corruptly."  Poindexter was also alleged to have obstructed a Congressional proceeding.

|  | **§ 1505** | **§ 1512(c)(2)** |
|---|---|---|
| state of mind | *corruptly* | *corruptly* |
| *actus reus* | *influences, obstructs, or impedes* | *obstructs, influences, or impedes* |
| object | *the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House . . . of the Congress* | *any official proceeding* <br> --- <br><br> (*official proceeding* includes a *proceeding before Congress*). 18  U.S.C. § 1515(a)(1)(B) |
| penalty | 5 years imprisonment | 20 years imprisonment |

---

[11]   *See* Crowl Motion to Dismiss (ECF 288) at 11-14.

9

Of significance to the instant case, *Poindexter* recognized that obstruction aimed at Congressional proceedings presented a different analytical framework in determining whether the statute was unconstitutionally vague.   In contrast to attempts to influence or impede judicial proceedings, attempts to influence Congress, a political body, were commonplace and not of a criminal nature. *See Poindexter*, 951 F.2d at 377-78.  (The term corruptly "must have some meaning ... because otherwise the statute would criminalize all attempts to "influence" congressional inquiries – an absurd result that the Congress could not have intended in enacting the statute"); *United States v. Russo*, 104 F.3d 431, 436 (D.C. Cir. 1997) (in contrast to *Poindexter's* concern that not all efforts to obstruct Congress can be criminalized, "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding leap to mind").  Thus, all the cases cited by the government which involve obstruction of judicial proceedings and related grand jury investigations are inapposite to resolving Mr. Crowl's challenge.

A.      The *Poindexter* Holding - "Corruptly" is Unconstitutionally Vague

In 1990, John Poindexter, President Reagan's National Security Advisor was convicted on two counts, among others, of obstruction of justice in violation of 18 U.S.C. § 1505 for making false and misleading statements to congressional committees and for participating in the preparation of a false chronology, deleting information from his computer and arranging a meeting at which Oliver North gave false statements.  *Poindexter*, 951 F.2d at 377. The D.C. Circuit reversed the two obstruction convictions, holding that the word "corruptly" as used in § 1505 was unconstitutionally vague as applied to Poindexter's prosecution. First, the Circuit held that applying § 1505 to Poindexter's false and misleading statements to Congress would require an "intransitive" rather than a "transitive" reading of the word "corruptly."  In other words, read intransitively, "corruptly"

10

requires that the defendant is or becomes corrupt; read transitively, the defendant could corrupt another by causing the other person to act corruptly.  Based on § 1505's language and structure, the Circuit found that the statute favored a transitive reading.  Second, the Circuit held that the term "corruptly" was too vague to provide constitutionally adequate notice that it proscribed lying to Congress. *Id.* at 379.

In response to the Poindexter decision, Congress enacted a statutory definition of the term "corruptly."  For purposes of Section 1505 only, "corruptly" now is defined by statute as "acting with an improper purpose, *personally or by influencing another*, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515(b) (emphasis added).[12]  With that statutory change, Congress addressed the first vagueness problem identified by the court in *Poindexter*.  Persons charged under § 1505 now have notice that Congress intended the word "corruptly" in § 1505 to apply in both the transitive and the intransitive sense.  A defendant who corrupts himself as well as one who corrupts another can be prosecuted under 18  U.S.C. § 1505.  However, by its terms, the amendment enacted by Congress only applies to § 1505 prosecutions so that the transitive/intransitive issue still presents a vagueness problem in the instant case.  And the government has not relied on § 1515(b) in its opposition.

---

[12]  By its terms, the new definition in § 1515(b) applies only to § 1505 prosecutions:

(b) As used in section 1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

11

*Poindexter* held that reading the term "corruptly" was unconstitutionally vague:

> [C]orruptly" is the adverbial form of the adjective "corrupt," which
> means "depraved, evil: perverted into a state of moral weakness or
> wickedness ... of debased political morality; characterized by bribery,
> the selling of political favors, or other improper political or legal
> transactions or arrangements."   A "corrupt" intent may also be
> defined as "the intent to obtain an improper advantage for [one]self
> or someone else, inconsistent with official duty and the rights of
> others.
>
> . . .
>
> We must acknowledge that, on its face, the word "corruptly" is vague;
> that is, in the absence of some narrowing gloss, people must "guess
> at its meaning and differ as to its application."
>
> . . .
>
> The various dictionary definitions of the adjective "corrupt" quoted
> in North I do nothing to alleviate the vagueness problem involved in
> attempting to apply the term "corruptly" to Poindexter's conduct.
> "Vague terms do not suddenly become clear when they are defined by
> reference to other vague terms." Words like "depraved," "evil,"
> "immoral," "wicked," and "improper" are no more specific – indeed
> they may be less specific – than "corrupt."  (A dictionary definition
> quoted in North I also mentions "bribery" and the like, but no such
> conduct is at issue on this appeal.).  As used in § 1505, therefore, we
> find that the term "corruptly" is too vague to provide constitutionally
> adequate notice that it prohibits lying to the Congress.

*Poindexter*, 951 F.2d at 378-79. (internal citations omitted).

*Poindexter* was not the first time that the D.C. Circuit found the terms "corrupt" and "corruptly" unconstitutionally vague.  *See, e.g., Ricks v. District of Columbia*, 414 F.2d 1097, 1106 (D.C. Cir.1968) (invalidating vagrancy statute as unconstitutionally vague) ("Immoral," and its synonyms "corrupt, indecent, depraved, dissolute,"  afford "an almost boundless area for individual assessment of the morality of another's behavior.").

**B.**     **Under *Poindexter*, the Term "Corruptly" in § 1512(c)(2) is Unconstitutionally Vague**

In response to Mr. Crowl's vagueness challenge, the government first argues (ECF at 313 at 21-22) that *Poindexter* did not hold that the term "corruptly" was vague *per se*. On this point, the government is mistaken. Several times, *Poindexter* stated that "corruptly" was facially vague.

> We must acknowledge that, ***on its face, the word "corruptly" is vague***; that is, in the absence of some narrowing gloss, people must "guess at its meaning and differ as to its application."
> . . .
> Notwithstanding the use of the ***facially vague*** term, we suppose that if the legislative history of § 1505 clearly indicates a more specific meaning of the term "corruptly," then the statute might constitutionally be applied to conduct that comes within that meaning.
> . . .
> [N]either the legislative history nor the prior judicial interpretation of § 1505 supplies the constitutionally required notice that the statute ***on its face*** lacks.

*Poindexter* at 378, 379, 386 (emphasis added).

Indeed, it was precisely because it found that "corruptly" was facially vague, that the D.C. Circuit went on to review the legislative history and judicial interpretations to determine if the term could be narrowed to avoid unconstitutional vagueness. In Mr. Crowl's case, the government has made no argument that the legislative history provides any "more specific meaning" of the term "corruptly." *Id.* And, of course, it cannot make that argument because the legislative history of § 1512(c)(2), enacted as part of the Sarbanes-Oxley Act targeted corporate fraud.[13] Thus, the statutory history does not provide a "more specific meaning of the term "corruptly," that would allow this

---

[13] The Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States,* 574 U.S. 528, 535-36 (2015)

Court to find that § 1512(c)(2) "might constitutionally be applied to" Mr. Crowl's alleged conduct.

To the contrary, the legislative history provides support that § 1512(c)(2) should not be read in the manner that the government endeavors to do in this case. *Yates v. United States,* 574 U.S. 528, 549 (2015) ("we resist reading §1519 expansively to create a coverall spoliation of evidence statute, advisable as such a measure might be. Leaving that important decision to Congress, we hold that 'tangible object' within 1519's compass is one used to record or preserve information").

Under the *Poindexter* analysis, "corruptly" obstructing, influencing or impeding a congressional proceeding does not at all clearly encompass the act of entering the United States Capitol to "make [their] voices heard" as President Trump asked his supporters to do, no matter how disorderly or violent other persons might have been.[14] While Mr. Crowl denies in whole the charges against him, accepting the allegations in the Indictment as true for purposes of the motion to dismiss, there is no allegation that Mr. Crowl entered the Capitol to suborn perjury, testify falsely, or spoil any evidence in a corrupt manner.  There is also no allegation that Mr. Crowl acted dishonestly, by paying a bribe to anyone or to gain an unfair advantage for himself.[15]  By way of contrast, Mr. Crowl's conduct *might* make out one of the several misdemeanor offenses that Congress has enacted and which DOJ ordinarily uses to prosecute Americans who are disorderly while in the Capitol.

---

[14]   While the government argues in its Opposition (ECF 313 at 25) that Mr. Crowl's obstructive conduct was the "unlawful and violent invasion of the Capitol," in fact, there is no allegation in the Indictment that Mr. Crowl was violent in any fashion.  Gov't Omnibus Opp.

[15]   Corruptly may be "characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantage for [one]self or someone else, inconsistent with official duty and the rights of others."  *Poindexter*, 951 F.2d at 378.  "Also instructive is the definition in Black's Law Dictionary at 311 (5th ed. 1979) that the word corruptly "[w]hen used in a statute, ... generally imports a wrongful design to acquire some pecuniary or other advantage."  *United States v. North*, 910 F.2d 843, 940 (D.C. Cir. 1990) (Silverman, J. , concurring in part)(decision modified)

C.      **Cases Cited by the Government are Inapposite**

Each of the cases upon which the government relies are inapposite.  For starters, *Poindexter* remains good law in the D.C. Circuit.  The out-of-circuit cases the government cites do not undermine *Poindexter* as precedent nor weaken the strength of the D.C. Circuit's reasoning.  The cases cited by the government also present a different vagueness analysis under *Poindexter* as they involve "core" behavior to which obstruction statutes may constitutionally be applied and none involve proceedings before Congress or implicate First Amendment activities.  *See Poindexter,* 951 F.2d at 385.[16]

1.      ***Poindexter* Is Not Limited to § 1505 Prosecutions**

The government's second argument - that other courts have declined to extend *Poindexter* to § 1512 and other obstruction statutes again fails.  In fact, contrary to the government's contention, in *United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996), the D.C. Circuit applied *Poindexter* in a § 1512 case.  *Morrison* rejected the as-applied challenge to the § 1512 conviction precisely because the defendant had committed "transitive" corruption in the *Poindexter* sense by endeavoring to persuade a witness "to give specific false testimony" in a judicial proceeding and offering the witness "some furniture if she signed the affidavit."  *Morrison*, 98 F.3d at 621-22; *see also United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999) (Friedman, J.) (finding that even after Congress amended § 1515 in the wake of *Poindexter* to define "corruptly" for purposes of § 1505,

---

[16]  Unlike courts of law covered by section 1503, congressional committees are part and parcel of a political branch of government and therefore serve wide-ranging political functions not limited to a search for truth in accordance with formal rules. They may also have a far-flung investigative scope and evoke legitimate political jousting between the executive and legislative branches. No one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees.

§ 1515's definition of "corruptly" to mean acting with an "improper purpose" is still unconstitutionally vague under *Poindexter*). Thus, *Morrison* extended *Poindexter* to a § 1512(b). Unlike in the present case, however, the core behavior at issue in *Morrison* fell within a constitutional application of "corruptly" as it involved the offer of a bribe in connection with a criminal trial.

Moreover, the government fails to note that other circuits have adopted or expressed support for the *Poindexter* analysis in § 1512 prosecutions. For example, the Third Circuit applied *Poindexter* in a § 1512 prosecution. *See United States v. Davis*, 183 F.3d 231, 249 (3rd Cir. 1999) ("We approved of *Poindexter's* reasoning in the § 1512 context in *United States v. Farrell*"); *United States v. Farrell*, 126 F.3d 484 (3d Cir.1997) (there must be something more inherently wrongful about the persuasion (such as bribery or encouraging someone to testify falsely). The Ninth Circuit has also approved of the *Poindexter* analysis. *See United States v. Aguilar*, 21 F.3d 1475 (9th Cir.1994), *aff'd in part and rev'd in part*, 515 U.S. 593 (1995) (finding "most helpful" *Poindexter*'s holding "that the term "corruptly," as used in 18 U.S.C. § 1505, was unconstitutionally vague as applied to Poindexter's false statements to Congress").

The cases cited by the *United States v. Shotts*,145 F.3d 1289 (11th Cir. 1998) provides little support for the proposition that *Poindexter* should not be extended beyond § 1505. First and foremost, *Shotts* involved allegations of tampering with a grand jury witness, *id.* at 1292, which unlike Mr. Crowl's charges, are the "core" behavior to which the obstruction statute may constitutionally be applied. *See United States v. Russo*, 104 F.3d 431, 436 (D.C. Cir. 1997) (noting

difference between judicial and congressional settings).[17]   Moreover, *Shott* relies on faulty circular reasoning.   *See United States v. Doss*, 630 F.3d 1181, 1189 (9th Cir. 2011) ("construing "corruptly" to mean "for an improper purpose" – especially if that improper purpose is to hinder an investigation or prosecution (which is already required by the statute) – is circular, essentially rendering the term "corruptly" surplusage).

  The fact that the government relies on *Holloway,* an unpublished opinion, reflects the paucity of legal support for its position.   *Holloway* was reversed on the basis that the charged § 1512(c)(2) obstruction did not involve an "official proceeding."   *United States v. Holloway*, 2009 WL 4048748 at \*15  (E.D. Cal.  2009), *rev'd sub nom*, *United States v. Ermoian*, 752 F.3d 1165 (9th Cir.  2013). *Holloway* has not been cited by any other court for the proposition that the *Poindexter* analysis does not extend to § 1512.   *Holloway,* is also factually inapposite as it involved an allegation that the defendants engaged in a scheme to "destroy, secrete, or put beyond the reach of law enforcement, evidence of Holloway's alleged criminal conduct."   *Holloway,* 2009 WL 4048748, at \*13.   Finally, *Holloway* rejected *Poindexter* in part as "out-of-circuit authority."   *Id.*   In sum, *Holloway* provides no precedential or persuasive value.

  In any event, the out-of-circuit cases cited by the government are not binding on this Court, are factually inapposite or mention *Poindexter* in dicta.   In each of those cases, courts upheld

---

[17]  "One can imagine any number of non-corrupt ways in which an individual can intend to impede the work of an agency or congressional committee. . . .The problem for the Poindexter court, then, was to discern some special meaning in the word "corruptly," some meaning "sufficiently definite, as applied to the conduct at issue. . . Otherwise "the statute would criminalize all attempts to 'influence' congressional inquiries – an absurd result that the Congress could not have intended in enacting the statute."   We have no such problem in this case.   Anyone who intentionally lies to a grand jury is on notice that he may be corruptly obstructing the grand jury's investigation."   *Russo*, 104 F.3d at 436.

obstruction counts as-applied to conduct relating to judicial, not Congressional proceedings, which present an entirely different situation in a vagueness analysis of obstruction cases, a distinction which *Poindexter* itself recognized. *See Poindexter*, 951 F.2d at 385 ("the language of § 1505 is materially different from that of § 1503"); *Russo*, *supra*.

### D.     The Supreme Court Has Not Abrogated *Poindexter*

The government's citation of *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017) for the proposition that *Poindexter* is no longer good law because it preceded *Arthur Andersen*, where the Supreme Court "did not imply that the term [corruptly] was too vague" borders on the ridiculous. For one, the Supreme Court's failure to "imply" a holding provides zero precedential value. Indeed, *Arthur Andersen* did not address the vagueness issue at all as it should not have once it determined that the instruction defining "corruptly" was deficient in allowing for innocent conduct to for the basis of a conviction. *See Arthur Andersen LLP v. United States,* 544 U.S. 696, 706-07 (2005). Once the Supreme Court reversed the conviction on the basis of a faulty jury instruction, it would necessarily refuse to address the vagueness issue on the principle of constitutional avoidance. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

Indeed, the Supreme Court's decision in *Arthur Andersen*, vacating a conviction under 18 U.S.C. § 1512(b) where jury instructions "diluted the meaning of "corruptly" such that it covered innocent conduct" supports the *Poindexter* holding. 544 U.S. 696, 697 (2005). While the Supreme Court did not address whether the term "corruptly" was unconstitutionally vague as applied to Arthur Andersen's conduct, its decision to vacate the conviction supports Mr. Crowl's vagueness argument.

18

and is contrary to the government's definition of corruptly.  In *Arthur Andersen*, the government

insisted on excluding "dishonestly" from the definition of "corruptly."  *Arthur Andersen LLP,* 544

U.S. at 706–07.

> The District Court agreed over petitioner's objections, and the jury
> was told to convict if it found petitioner intended to "subvert,
> undermine, or impede" governmental factfinding by suggesting to its
> employees that they enforce the document retention policy.  These
> changes were significant.  No longer was any type of "dishonest[y]"
> necessary to a finding of guilt, and it was enough for petitioner to
> have simply "impede[d]" the Government's factfinding ability. . . .By
> definition, anyone who innocently persuades another to withhold
> information from the Government "get[s] in the way of the progress
> of" the Government. With regard to such innocent conduct, the
> "corruptly" instructions did no limiting work whatsoever.

*Id.*

### E.    Defining "Corruptly" As "Wrongful, Immoral, Depraved or Evil" Does Not Pass Constitutional Muster In This Case

In asking the Court to reject Mr. Crowl's vagueness challenge to the § 1512(c)(2) counts, the

government argues that "corruptly" is not unconstitutionally vague because Mr. Crowl's actions

"were wrongful, immoral, depraved, or evil." (ECF 313 at 25-26).  But *Poindexter* found that these

very terms were unconstitutionally vague:

> "Vague terms do not suddenly become clear when they are defined by
> reference to other vague terms." Words like **"depraved,"** "**evil**,"
> "**immoral**," wicked," and "improper" are no more specific – indeed
> they may be less specific – than "corrupt."

*Poindexter*, 951 F.2d at 378-79 (emphasis added).  The out-of-circuit cases cited by the government

for this proposition do not undermine the precedential or authoritative value of  *Poindexter.*

*United States v. Gordon* is factually inapposite and simply does not support the government's

argument.  First, the § 1512(c)(2) prosecution against Gordon charged that he asked another person

19

to backdate and create false documents which Gordon intended to present in a government-initiated

civil forfeiture proceeding.  *United States v. Gordon*, 710 F.3d 1124, 1148 (10th Cir. 2013).  Thus,

unlike the allegations against Mr. Crowl, the charges against Gordon involved what *Poindexter*

described as the "core behavior to which the statute may constitutionally be applied."  *Poindexter,*

at 385.  Second, *Gordon* does not support the government's view that all it has to prove to show that

Mr. Crowl acted corruptly is to show that his conduct was "wrongful, immoral, depraved, or evil."

Indeed, the Tenth Circuit did not define "corruptly" in such vague terms:

> Acting "corruptly" within the meaning of § 1512(c)(2) means acting
> "with an improper purpose and to engage ***in conduct knowingly and
> dishonestly*** *with the specific intent to subvert, impede or obstruct the
> [forfeiture proceeding].*"
> . . .
> Any rational jury could have determined that the creation of these
> false documents was for the corrupt purpose of redirecting the
> government, based upon false pretenses, away from property that it
> was trying to seize (*i.e.*, Mr. Gordon's home) in an official proceeding
> and that Mr. Gordon could foresee that the document would have this
> effect.

*Gordon*, 710 F.3d at 1151 (emphasis added; alteration in original).  As the Court well knows, Mr.

Crowl is not alleged to have acted dishonestly or with false pretenses with the intent to seek an unfair

advantage for himself.[18]

The *Watters* decision is wholly inapposite as court did not address the vagueness issue:

> We need not, at this point, launch into a full scale interpretive process
> to come up with a definition of "corruptly" in section 1512(c) – what
> would be an issue of first impression – because the parties have not
> raised it.

---

[18]  Count Two charges that Mr. Crowl "attempted to, and did, corruptly obstruct, influence,
and impede an official proceeding, that is, the Certification of the Electoral College vote, and did aid
and abet others known and unknown to do the same" in violation of 18 U.S.C. § 1512(c)(2).

*United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013).  Moreover, *Watters* also involved "core" behavior – providing a forged receipt to the government in connection with its prosecution of a conspiracy to transport and sell stolen vehicles.  *Id.* at 734.

*Friske* provides no support for the government's argument because the case was reversed on the ground that the government failed to prove that defendant was aware that an official proceeding was pending, an essential element of the § 1512(c)(2).  *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011).  Thus, the passage which the government cites is dicta and does not support its argument as *Friske* required that the defendant acted "knowingly and dishonestly."  *Id.,* 640 F.3d at 1291.  The requirement of dishonest conduct comports with the notion that the core behavior of obstruction statutes is the perjury or attempts to falsify or destroy evidence.  But the indictment against Mr. Crowl alleges no such conduct.

Similarly, *Matthews* provides no support for the government's arguments.  The case involved "core" obstruction charges – a failed attempt by a local chief of police to thwart a federal firearms offense brought against a friend, which included trying to "lose" the firearm, enlisting others in his dishonest activities, and committing perjury before a grand jury.  *United States v.* Matthews, 505 F.3d 698, 701 (7th Cir. 2007).  The Seventh Circuit did not consider a vagueness argument and in any event, the court found that any error would have been harmless given the overwhelming evidence that the defendant acted wrongfully.  Again, the *Matthews* case, which involved obstruction of a criminal case does not present the same vagueness considerations as a prosecution for obstruction of Congressional proceedings.  *See Russo*, *supra,* (in contrast to *Poindexter's* concern that not all efforts to obstruct Congress can be criminalized, "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding leap to mind").

**F.    The Government Failed To Address Mr. Crowl's As-Applied Challenge**

All of the cases cited by the Government involve allegations of behavior directed at impairing the integrity of evidence either through its destruction or by attempts to falsity it.  Mr. Crowl, however, is not charged with suborning perjury, destroying or falsifying evidence, or acting dishonestly in any manner to gain an unlawful advantage for himself.  Accordingly, the government's decision to respond to Mr. Crowl's as-applied challenge with a footnote that relies on the "same reasons" that it propounded for denying the facial challenges amounts to no response. Gov't Omnibus Opp (ECF 313) at 26 (n. 9).  Indeed, the government does not even reference Mr. Crowl's motion (ECF 288) in it is non-response.  Accordingly, the Court should deem the issue conceded or weigh the government's lack of response as evidence that the government was unable to submit a credible opposition.

**G.    The Court Must Apply A Heightened Standard of Analysis**

The First Amendment activities implicated in the case requires "a more stringent vagueness test." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *see also United States v. Reeves*, 752 F2d 995, 1001 (5th Cir. 1985) ("To interpret 'corruptly' [in obstruction statute] as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth' in this statute because of the chilling effect on protected activities. . . Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'").

22

### III.     The Meaning of Otherwise – Congress Does Not Hide Elephants in Mouseholes

Congress does not alter the fundamental scope of a legislative scheme in "vague terms or ancillary provisions" as the government's reading of "otherwise" would do.  *Whitman v. American Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress does not hide elephants in mouseholes").  In the government's view, the definition of "otherwise" in § 1512(c)(2) is not limited in any manner and would thus alter the fundamental scope of § 1512.  Untethered from corporate fraud or spoilation of evidence – its legislative roots – "otherwise" provides no clear meaning and results in an unconstitutionally vague statute.

### A.     Cases Cited by Government are Inapposite

Such a reading would also be inappropriate as it would render superfluous every other provision of § 1512 and of Chapter 73 itself, as the "otherwise" clause would reach every act of obstruction.  *See, e.g., Corley v. United States,* 556 U.S. 303, 314 (2009) ("Government's reading is thus at odds with one of the most basic interpretive canons, that  [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.")  (internal quotes omitted).

The two out-of-circuit cases cited by the government are inapposite because they involve tampering with witnesses and information to be presented to a grand jury, the core conduct prohibited by § 1512.  Both cases also involve obstruction of federal criminal investigations, which unlike proceedings before Congress, present different factual and legal issues.[19]  And, at best the two

---

[19] "[T]hose opinions can be taken to express the view that any endeavor to obstruct a judicial proceeding is inherently – that is, as a matter of law – corrupt....  And at least for the conduct covered by section 1503 that legal presumption might be warranted since, after all, very few noncorrupt ways to or reasons for intentionally obstructing a judicial proceeding leap immediately to mind."  *United States v. North*, 910 F.2d 843, 941 (D.C. Cir.) (Silberman, J., concurring in part and dissenting in

cited cases rejected as-applied challenges.

Thus, in *United States v. Petruk*, 781 F.3d 438, 441 (8th Cir. 2015), the defendant challenged his conviction for obstruction under § 1512(c)(2).  He had tried to secure a false confession from alibi witnesses during the pendency of a federal prosecution for car-jacking.  The Eighth Circuit rejected his argument that § 1512(c)(2) is limited to obstruction "involving documents or physical evidence" and his conduct did not involve either.  It held that "otherwise" as used in § 1512(c)(2) covered the defendant's attempts to obstruct his federal prosecution, "without regard to whether the action relates to documents or records."  *Petruck*, 781 F.3d at 446-47.

*Petruk* is inapposite.  First, the conduct at issue clearly fell within the core conduct covered by § 1512.[20]  Second, *Petruk* involved obstruction of a federal grand jury investigation.  *Id.  at* 447.  And, as the D.C. Circuit has noted, obstruction directed at the administration of justice is materially different from attempts to influence Congress.  *See United States v. Russo*, 104 F.3d 431, 436 (D.C. Cir. 1997) (in contrast to *Poindexter's* concern that not all efforts to obstruct Congress can be criminalized, "very few non-corrupt ways to or reasons for intentionally obstructing a judicial proceeding leap to mind").  Lastly, *Petruk* is an out-of-circuit case that did not explicitly reference "vagueness" and upheld the conviction as applied to the facts before it.  *See Petruk,* 781 F.3d at 447 ("the evidence is sufficient to support his obstruction conviction . . .for actions he took to secure false statements after the initiation of the federal prosecution").

---

part), *modified*, 920 F.2d 940 (1990) .

[20]  Section 1512 "prohibits various forms of witness tampering."  *Poindexter*, 951 F.2d at 382.

The Seventh Circuit's decision in *United States v. Volpendesto,* 746 F.3d 273, 286 (7th Cir. 2014) provides even less support for the government's arguments.  As with *Petruk*, it involved obstruction of a grand jury investigation.[21]  The case provides no analysis or reasoning and thus is thus not persuasive on the issue before this Court.[22]

As the D.C. Circuit has explained:

> It is not possible to extrapolate from a case holding that a particular act is within the scope of the statute in order to determine whether a different act is also covered unless the court provides a coherent principle for inclusion or exclusion. The cited cases simply do not contain sufficiently clear – or consistent – reasoning to permit such an extrapolation.

*Poindexter*, 951 F.2d at 384.

**B.**      ***Yates* Requires Court to Look to § 1512(c)(1) in Interpreting § 1512(c)(2)**

The government's attempt to distinguish the Supreme Court's decision in *Yates* also lacks merit.  It seeks to distinguish *Yates* by arguing that the canon of *ejusdem generis* applied in *Yates* should not be used to analyze § 1512(c) because § 1512(c) involves two subsections rather than just

---

[21] "[O]ut of desire to influence what evidence came before the grand jury [the defendant] had enlisted a cadre of corrupt cops to feed him information that he had no right to have. And he showed a willingness to pass this wrongfully obtained information along to his associates. *Volpendesto*, 746 F.3d 273 at 287.

[22] *Volpendesto*, 746 F.3d at 286 (emphasis added):

[The defendant] challenges his conviction for conspiracy to obstruct justice in violation of 18 U.S.C. § 1512(k).  Polchan and Cicero police officer Dino Vitalo were charged with agreeing to violate 18 U.S.C. § 1512(c)(2), which penalizes one who "corruptly" – that is, with a wrongful purpose – "obstructs, influences, or impedes any official proceeding or attempts to do so." *This "expansive" subsection "operates as a catch-all to cover 'otherwise' obstructive behavior" that might not constitute a more specific offense like document destruction, which is listed in (c)(1).*

a string of terms within one paragraph.[23]  However, the government cites no case where the canon of *ejusdem generis* has been explicitly limited in this fashion.

Indeed, while the government suggests that no case exists for application of the cannon to different subsections, the D.C. Circuit applied the canon in just such a situation.  *See Trans Union Corp. v. F.T.C.*, 81 F.3d 228, 234 (D.C. Cir. 1996) (applying *ejusdem generis* canon to interpret 15 U.S.C. § 1681b).  As with § 1512(c), the statute under review in *Trans Union* involved a list of disjunctive provisions separated by semicolons.[24]  Applying the rule of *ejusdem generis*, the D.C. Circuit interpreted the catch-all "otherwise" provision by reference to the other subsections:

> The "legitimate business" catchall of § 1681b(3)(E) is best understood as meaning types of business transactions similar to those set forth in subsections (A) through (D), *i.e.*, those for which information gathered for credit (and the other specific purposes) is central.  *See Houghton v. New Jersey Mfrs. Ins. Co.*, 795 F.2d 1144,

---

[23] *Ejusdem Generis* refers to the principle that "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration."  *Norfolk & Western R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991).

[24] In pertinent part, 15 U.S.C. §§ 1681b provides:

**(a) In general**

Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(3)To a person which it has reason to believe–

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or
. . .
(F)  *otherwise* has a legitimate business need for the information –

> 1152 (3rd Cir. 1986) (applying rule of ejusdem generis to §
> 1681b(3)(E)).  While it may be hard to firmly articulate just what is
> similar to though not contained within § 1681b(3)'s other purposes,
> *id.*, we find no resemblance between target marketing and those other
> purposes: extension of credit, employment, underwriting of insurance,
> and license eligibility.

*Trans Union,* 81 F.3d at 234.  *See also Neal v. Clark*, 95 U.S. 704, 708-09 (1877) ("In the construction of statutes, likewise, the rule noscitur a sociis is very frequently applied; the meaning of a word, and, consequently, the intention of the legislature, being ascertained by reference to the context, and by considering whether the word in question and the surrounding words are, in fact, ejusdem generis, and referable to the same subject-matter.').

Thus, the Supreme Court's decision in *Yates,* interpreting § 1509, an obstruction provision also enacted as part of Sarbanes Oxley requires that the Court interpret the term "otherwise" in § 1512(c)(2) by reference to § 1512(c)(1). Section 1512(c)(1) reaches spoilation of records, documents or other objects "with the intent to impair the object's integrity or availability for use in an official proceeding."  The "otherwise" catch-all in § 1512(c)(2) is best understood to criminalize behavior that consists of something *other* than "alter[ing], destroy[ing], mutilat[ing], or conceal[ing]" objects undertaken corruptly with the same intent as § 1512(c)(1), that is, "with the intent to impair the object's integrity or availability for use in an official proceeding."  No matter how the term "otherwise" is stretched, there is no permissible way to make it encompass the conduct alleged in the Indictment.

### C.      The Sarbanes Oxley Act

The government's suggestion (ECF 313 at 28) that the title given to § 1512(c) in the Sarbanes

Oxley Act  indicates that tampering with a record is a separate provision from "otherwise impeding

an official proceeding" sheds no light on the whether the term "otherwise" reaches the conduct

alleged in the Indictment.  What is clear is that in amending § 1512 to add § 1512(c), Congress was

focused on "corporate fraud."  The "short title" for § 1512(c) is "Corporate Fraud Accountability Act

of 2002."[25]  The scope of § 1512(c)(2)'s *otherwise* provision must be construed in light of the other

provisions in § 1512 as well as Congress' desire to stamp out corporate fraud.

Indeed, the title quoted by the government "Tampering with a Record *or* Otherwise Impeding

an Official Proceeding" cannot mean what the government suggests.  *See, e.g., Arthur Andersen LLP

v. United States*, 544 U.S. 696, 706 (2005) (reversing conviction where instruction allowed jury to

convict if it found that defendant "impeded" the Government's factfinding ability, which would

encompass innocent persuasion).

Moreover, the reason the government cites no legislative history is that it all runs in favor of

Mr. Crowl's interpretation.  The Court should in particular review the Senate Judiciary Committee

report on what would become the Sarbanes-Oxley Act of 2002. It states that the Corporate Fraud

Accountability Act was designed to "clarify and close loopholes in the existing criminal laws relating

to the destruction or fabrication of evidence and the preservation of financial and audit records." S.

Rep. No. 107-146, at 14-15. Section 1512(c) did not exist as part of the original proposal. S. 2010,

107th Cong. (2002). Rather, Senator Trent Lott introduced it as an amendment in July 2002. 148

---

[25]  *See* P. Law 107-204, Title XI, Section 1101 of the Sarbanes Oxley Act, amending § 1512
to add § 1512(c) ("This title may be cited as the "Corporate Fraud Accountability Act of 2002").

Cong. Rec. S6542 (daily ed. July 10, 2002). The senator explained the purpose of adding § 1512(c):

> [This section] would enact stronger laws against document shredding. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

*Id.* at S6545.  Senator Orin Hatch similarly explained that § 1512(c) would "close [] [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents.  *Id.*  There is no support whatsoever in the legislative history that the Sarbanes-Oxley reforms were intended to effect a sweeping changing in Congress's understanding of a congressional "proceeding" under Section 1505 (an "inquiry" or "investigation") or to create an obstruction crime that renders the rest of Chapter 73 superfluous.

## CONCLUSION

For all the reasons, noted above and in Mr. Crowl's Motion (ECF 288) and in Mr. Harrelson's Motion  (ECF 278), which Mr.  Crowl adopted, the Court should dismiss Counts One and Two, which are based on § 1512(c)(2) prosecutions.

Mr.  Crowl would also like to bring to the Court's attention that in a recent hearing, Judge Moss raised the vagueness issue *sua sponte* and requested supplemental briefing on the questions of whether the application of § 1512(c)(2) to a January 6 case provided adequate notice to the defendants.  *See United States v. Montgomery*, 21-cr-46, 8/3/21 Hr'g (D.D.C. 2021) (Moss, J.).[26]

Respectfully submitted,

*/s/ Carmen D.  Hernandez*

**Carmen D.  Hernandez**
Bar No.  MD03366
7166 Mink Hollow Rd
Highland, MD 20777
(240) 472-3391

## CERTIFICATE OF SERVICE

I hereby certify that the instant Memorandum was served on all counsel of record 7th day of September, 2021 on all counsel of record via ECF.

/s/

**Carmen D.  Hernandez**

---

[26] Mr.  Crowl will submit a copy of the Transcript of the hearing to the Court and the parties via email.

30