**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **vs.** | * | **Case No.  21-cr-00028-2 (APM)** |
| | * | |
| **DONOVAN CROWL**, | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

**DEFENDANT CROWL'S RESPONSE TO THE**
**GOVERNMENT'S SUPPLEMENTAL BRIEF ON 18 U.S.C. § 1512(c)(2)**

## TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      Applying § 1512(c)(2) to acts unrelated to the availability or integrity of evidence would render as surplusage: (1) "otherwise obstructs" in § 1512(c)(2); (2) the rest of § 1512; and (3) the entirety of Chapter 73. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

        A.      The government's interpretation renders "otherwise" surplusage. . . . . . . . . . . . . 5

        B.      The government's interpretation renders the rest of § 1512 surplusage. . . . . . .   14

        C.      The government's interpretation renders swathes of Chapter 73 surplusage.. . . . 16

II.     *Yates* plainly bars the government's interpretation of § 1512(c)(2). . . . . . . . . . . . . . . .   17

III.    The "corruptly" and "nexus" elements do nothing to avoid surplusage. . . . . . . . . . . . . 24

IV.    The Fifth Superseding Indictment does not even allege Defendants' interference with "documentary or tangible evidence". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

V.     The government's mistaken interpretation of "official proceeding" is another symptom of the foregoing problems. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Request for a Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## INTRODUCTION

The Court requested supplemental briefing on whether 18 U.S.C. § 1512(c)(2), "Tampering with a witness, victim or an informant," covers acts of political protest at the joint session of Congress to count Electoral College certificates. In response, the government filed a 30-page legal memorandum addressed to a straw man argument. "Nothing in Section 1512(c)(2)'s text, structure, or history, or in the relevant legal precedent, limits it to obstruction tied to *documentary or tangible* evidence." Gov't Suppl., p. 1 (emphasis added). Mr. Crowl has never made that argument.

Mr. Crowl has argued that § 1512(c)(2) only covers acts that corruptly affect the integrity or availability of any kind of evidence. The government does not cite any authority holding that it does. To the contrary, every § 1512(c)(2) case cited by the government concerns interference with the integrity or availability of information destined for a proceeding. That is what every provision in § 1512 concerns.

As in *Yates v. United States*, 574 U.S. 528 (2015), the government makes a category mistake. Section 1519's criminalization of tampering with any "record, document or tangible object" did not cover a dead fish tossed overboard because, "[m]indful that in Sarbanes-Oxley, Congress trained its attention on corporate and accounting deception and cover ups," the legislature plainly meant objects that record or preserve information – the lifeblood of any "proceeding." A companion to Section 1519 in Sarbanes-Oxley, Section 1512(c)'s criminalization of "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object . . . or otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding," likewise does not reach acts that do not intentionally affect the flow or quality of information in a proceeding. If it did, the rest of Chapter 73 would be surplusage. The "mens rea" and nexus

limitations on § 1512(c)(2)'s reach that the government proposes do nothing to avoid mass surplusage because the other sections in Chapter 73 carry the same "limitations."

The parties have addressed the meaning of "official proceeding," the *ejusdem generis* and *noscitur a sociis* canons, and the "corruptly" element in conceptual silos.  In fact, they mutually reinforce that the government attempts to jam a square peg in a round hole.  That is why obstruction of justice statutes have never been used to prosecute acts having no tie to the quality or availability of evidence in a proceeding; why in ordinary language we call political protesters "riotous" or "mob-like" but not "corrupt"; and why over a century of federal jurisprudence does not yield an example of an obstructed "proceeding" that did not involve an inquiry or investigation.

Moreover, in this particular case, the fact that the conduct at issue implicates First Amendment activities requires this Honorable Court to act with heightened scrutiny.  When activity that falls within the shadow of the First Amendment is alleged to be criminal, courts are required to apply the strictest standards of judgment in ensuring that only intentional criminal activity is prosecuted and not constitutionally protected actions, beliefs or associations. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918-19 (1982) (boycott activity, which was not itself violent, that resulted in the loss of business profits was constitutionally protected); *Noto v. United States*, 367 U.S. 290, 299-300 (1961) (requiring "rigorous standards of proof" in Smith Act prosecutions). Nothing in the Government's Supplemental Memorandum eliminates the vagueness issues present in this case.

**ARGUMENT**

I. **APPLYING § 1512(c)(2) TO ACTS UNRELATED TO THE AVAILABILITY OR INTEGRITY OF EVIDENCE WOULD RENDER AS SURPLUSAGE: (1) "OTHERWISE OBSTRUCTS" IN § 1512(C)(2); (2) THE REST OF § 1512; AND (3) THE ENTIRETY OF CHAPTER 73**

The first section of the government's supplemental brief sets out the ostensible goal of establishing that § 1512(c)(2) "covers the defendants' actions on January 6, 2021." Gov't Supp., p. 3. Yet the next 12 pages attempt to establish a point that, even if true, does not yield the conclusion that Section 1512(c)(2) "covers the defendants' [alleged] actions."

Proceeding from an analysis of the statute's "ordinary meaning" to a review of the case law, the government develops the argument that "Section 1512(c)(2) encompasses misconduct that threatens an official proceeding beyond the simple document destruction that Section 1512(c)(1) proscribes." Gov't Supp., p. 4; pp. 5-14. However, the question is not whether Section 1512(c)(2) merely reaches beyond "simple document destruction" but whether it reaches acts that do not intentionally affect the integrity or availability of evidence in a proceeding whatsoever.[1]

Accordingly, Mr. Crowl will use the government's interpretive tools but apply them to the relevant question. As the government correctly observes, the Court looks first to the statutory language, "giving the words used their ordinary meaning." *Lawson v. FMR LLC*, 571 U.S. 429, 440 (2014). In order to do that, the Court must hew closely to the "'endlessly

---

[1] The government's blinkered focus on the "simple document destruction" straw man leads it to strange places. A "nexus-to-tangible-evidence-or-documents requirement," it warns, would "render nonsensical" § 1512(c)(2)'s actus reus verbs "obstruct[], influence[], or impede[]." Gov't Supp., p. 9. "[A] defendant cannot 'obstruct' a document or 'impede' a financial record." *Id.*

Mr. Crowl agrees. However, he finds it telling that although a defendant can surely "obstruct[], influence[], or impede[]" the "integrity or availability" of information "use[d] in an official proceeding" that happens *not* to be an "object" (e.g., testimony), the government anywhere addresses in 30 pages of briefing why § 1512(c)(2) is not plainly understood to "otherwise" cover impairment of *non-physical* evidence.

reiterated principle of statutory construction . . . that all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)).  And "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013).

Again, the relevant statute provides,

> Whoever corruptly—
>
> (1) *alters*, *destroys*, *mutilates*, *or conceals* a *record, document, or other object*, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; *or*
>
> (2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned . . .

§ 1512(c) (emphasis added).

A construction of § 1512(c)(2) that reaches acts not intended to affect the availability or integrity of evidence used in an official proceeding commits the Court to several layers of surplusage.

## A.   The Government's Interpretation Renders "Otherwise" Surplusage

If subsection (c)(2) reaches any and all obstructive acts, the words "or otherwise" have no meaning.  That is because the subsection would reach just as far if it simply read, "Whoever corruptly . . . obstructs, influences, or impedes any official proceeding . . .shall be fined. . ." Conversely, a construction of subsection (c)(2) that reaches conduct directed at undermining the proceeding through actions that affect the integrity and availability of evidence *beyond document impairment*, gives meaning to the word "otherwise" in subsection (c)(2).

The government's own cases do Mr. Crowl's work for him. In every § 1512(c)(2) decision cited by the government, "otherwise" performs the task of capturing conduct that, while not "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object," §1512(c)(1), yet still "otherwise" constitutes actions impairing the *integrity and availability of non-object information* used in the "official proceeding":

- *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (soliciting tips from corrupt cops to evade surveillance constituted evidence sufficient for jury to find "efforts were out of a desire *to influence what evidence came before the grand jury*") (emphasis added);

- *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (disclosing identity of undercover agent to subject of grand jury drug investigation evidence sufficient to find purpose was to "*thwart evidence from reaching the investigation*") (emphasis added);

- *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (attempting to obtain false statement *to be used in pending federal charges* sufficient to satisfy § 1512(c)(2));

- *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (making false statements "*directly to the grand jury itself*" sufficient to satisfy § 1512(c)(2)) (emphasis original);

- *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013) (false responses to interrogatories *that were filed in the official proceeding* sufficient to satisfy § 1512(c)(2));

- *United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (making false statements to outside counsel "so that counsel *would provide misleading information to the grand jury*") (emphasis added).

The government's § 1512(c)(2) cases do not just fail to support an argument that the "residual clause" reaches conduct not intended to affect the availability or integrity of information used in the "official proceeding." They provide positive proof that Mr. Crowl's construction of § 1512(c)(2) gives meaning to "or otherwise obstructs. . ." while the government's interpretation improperly leaves that phrase surplusage.[2]

---

[2] The Court will notice that the government itself cites cases that even reject its straw-man interpretation that § 1512(c)(2) goes beyond tampering with physical evidence. Gov't Suppl., p. 6. *United States v. Singleton*, No. 06-CR-80, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006)

The same point is shown in the government's feeble attempt to distinguish *Begay v. United States*, 553 U.S. 137 (2008).  *Begay* is dispositive here.  There, the Court used *ejusdem generis* to determine what crimes were covered by the statutory phrase "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves* conduct that presents a serious potential risk of physical injury to another." 553 U.S. at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis added).  *Begay* held that the "otherwise involves" provision covered "only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" *Id.*  Had Congress intended the latter "all encompassing meaning," "it is hard to see why it would have needed to include the [preceding statutory] examples at all." *Id.*

In *Begay*, the government counters, "the 'otherwise involves' provision covered only crimes 'similar' to those in the enumerated list. . . In Section 1512(c)(2), by contrast, the 'otherwise' phrase *stands alone* . . .and is 'plainly separated and *independent of*' Section 1512(c)(1)." Gov't Suppl., p. 25 (citing *Ring*, 628 F. Supp. 2d at 224 n. 17) (emphasis added). The government's argument is grammatically frivolous.  By its definition, the phrase "or otherwise obstructs. . ." cannot "stand alone," if the government is contending that the phrase possesses meaning without reference to another proposition.

As the *Begay* court itself found, the adverb "otherwise" is defined to mean "in a different way or manner." 553 U.S. at 144 (quoting Webster's Third New International Dictionary 1598 (1961)).  In turn, the word "different" is an adjective that means "not of the same kind: partly or totally unlike." DIFFERENT, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/different.  More specifically, it is a comparative adjective, which by its

---

(unpublished) (concluding that Section 1512(c)(2) "require[s] some nexus to tangible evidence, though not necessarily tangible evidence already in existence"); *see also United States v. Hutcherson*, No. 05-CR-39, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) (same).

definition involves a relationship between two or more subjects.  COMPARATIVE, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/comparative.  Section 1512(c)(2) begins with the phrase "or otherwise obstructs. . ." Therefore, it does not "stand alone" in any relevant grammatical sense.

However, even if § 1512(c)(2)'s "or otherwise obstructs . . ." cannot definitionally "stand alone," the government also says that the phrase is at least "independent of" § 1512(c)(1) specifically.  Gov't Suppl., p. 25.  By "independent of" the government may have intended that § 1512(c)(2)'s language constitutes an independent clause, as that term is understood in grammar.  Or it may have meant "independent" in some less technical sense.  Either way, the government's claim is frivolous.  An "independent clause" is one that stands by itself as a simple sentence, *i.e.*, it contains a subject and a predicate and completes a proposition by itself.  INDEPENDENT CLAUSE, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/independent%20clause.

Section 1512(c)(2) is not an independent clause because "or otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so . . . shall be fined . . . or imprisoned" contains neither a subject nor a complete predicate.  The predicate is not complete because the meaning of "or otherwise obstructs, influences, or impedes any official proceeding" cannot be determined without reference to the verb or verbs by which the comparative adverb "otherwise" by its definition modifies the verbs that follow it.  If § 1512(c)(2) is not an independent clause it is a dependent clause, which means it is "connected to the main clause of a sentence."  DEPENDENT CLAUSE, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/dependent%20clause.  The clause to which § 1512(c)(2) is "connected" is § 1512(c)(1).  Thus, § 1512(c)(2) is not "independent of" §

1512(c)(1) in any relevant grammatical sense.

Therefore, the "otherwise" provision in § 1512(c)(2) is not grammatically distinct from that in *Begay*.  That leaves only the *Begay* issue whether the "otherwise" conduct charged here is a "similar crime" to the ones enumerated in § 1512(c)(1).  553 U.S. at 142.  By "similar crimes" *Begay* meant "crimes that are roughly similar in kind as well as in degree of risk posed to the [enumerated] examples themselves." *Id.* at 143.  There, the "example crimes" were "burglary, arson, extortion and crimes involving the use of explosives." *Id.*  *Begay* held that DUI was not "similar" to those because "the listed crimes involve purposeful, 'violent' and 'aggressive' conduct," which driving intoxicated did not necessarily entail.  *Id.*

Here, the government proposes that § 1512(c)(2) reaches obstructive acts that do not intend to affect the integrity or availability of evidence used in a proceeding.  It is easy to grasp why Mr. Crowl's interpretation of § 1512(c)(2) satisfies *Begay* but the government's does not.  Mr. Crowl's interpretation of "or otherwise obstructs" is not limited to physical evidence destruction of the type enumerated in § 1512(c)(1).  However, the conduct his interpretation captures is still a "similar crime" to the enumerated list.  To use the government's own cases, although soliciting false testimony (§ 1512(c)(2)) is not identical to document shredding (§ 1512(c)(1)), it is *Begay*-similar because both crimes involve acts intended to affect the integrity or availability of evidence in a proceeding.  *Volpendesto*, 746 F.3d at 286; *Phillips*, 583 F.3d at 1265; *Petruk*, 781 F.3d at 447; *Carson*, 560 F.3d at 585; *Burge*, 711 F.3d at 809; *Ring*, 628 F. Supp. 2d at 223.

By contrast, the government's interpretation of § 1512(c)(2) does not even describe the contours of the acts it claims are covered.[3]  Thus, the government does not engage with the *Begay* analysis at all.  At times, it appears to suggest that unlawful presence in the Capitol alone is covered.  Gov't Suppl., p. 25 ("They are alleged to have forced their way into the Capitol to impede Congress's certification of the Electoral College vote at the very moment that certification was underway. . .").  Unlawful presence is not a crime "similar" to the document destruction crimes enumerated in § 1512(c)(1) because that offense does not intrinsically concern preventing evidence from reaching a proceeding.  Trespass is not obstruction of justice. At other times, the government appears to suggest the relevant covered conduct is intimidation or threatening behavior.  Gov't Suppl., p. 15 (listing defendants' "stack formation" and "helmets, goggles, hard-knuckle tactical gloves").  In that case, these offenses are not "similar crimes" to those enumerated in § 1512(c)(1) for the exact same reason that, in *Begay*, DUI was not "similar" to "burglary, arson, extortion and crimes involving the use of explosives," namely, the crimes listed in § 1512(c)(1) do not necessarily entail "threatening" and "aggressive" conduct. 553 U.S. at 143.

It is critical to recognize that the government's interpretation out-*Begays Begay*.  Not only is its construction of § 1512(c)(2)'s "otherwise" crime not "similar" to the enumerated offenses in § 1512(c)(1), it is not *Begay*-similar to any other provision in § 1512.  Every crime in § 1512(a)-(c)(1) and (d) concerns actions designed to affect the integrity or availability of evidence in a proceeding.  The government argues that the residual clause is the only provision in a statute titled "Tampering with a witness, victim, or informant" that need not have any

---

[3] As with its definition of "corruptly," the government shimmies to avoid defining key terms for as long as possible.  It is forced to keep dancing because there is no coherent way to create a static obstruction system capturing the hundreds of motley situations in a "riot."  Square peg in a round hole.

connection to evidence impairment.  Were the context of this case different, it seems likely that an argument so novel and frivolous would have long ago lost the Court's serious consideration.

The government's grammatical errors in interpreting 1512(c)(2) are repeated in its reliance on Justice Scalia's construction of the omnibus clause in § 1503, to which he declined to apply the *ejusdem generis* canon.  *United States v. Aguilar*, 514 U.S. 593, 610 (1995) (Scalia, J., dissenting in part and concurring in part). The omnibus clause is emboldened below:

> **Whoever** corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, **or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice**, shall be punished . . .

§ 1503 (emboldening added).

Aguilar attempted to argue that, under *ejusdem generis*, since all the rest of § 1503 refers to actions directed at jurors and court officers, the emboldened omnibus clause could not apply to actions directed at witnesses.  514 U.S. at 614.  But as Justice Scalia found, the provisions in Section 1503 "only share the word 'Whoever,' which begins the statute, and the penalty provision which ends it." *Id.* at 615. The provisions were, Justice Scalia said, "independent."

It is hard to miss the grammatical differences between the interpretive issue Justice Scalia faced and the one confronted by this Court.  The unemboldened first part of Section 1503 begins with the phrase "whoever corruptly, or by threats or force, or by any threatening letter or communication. . ." and so does the emboldened "omnibus clause."  Notice that the clauses that

Justice Scalia found "independent" were *grammatically* independent clauses, *i.e*, they stand as complete sentences without the other.  By contrast, as shown above, § 1512(c)(2) is a clause that "depends" on § 1512(c)(1) to inform the meaning of its predicate.  Also, unlike the clauses in § 1503, those in § 1512(c)(1) and (c)(2) share an element of the offense in common that is not repeated in each subpart, *i.e.*, the "corruptly" element.[4]

Notwithstanding all the surplusage, even if the Court were to somehow find the government's construction formally correct, it is certainly not "clearly" so.  Thus, the Court would turn to § 1512(c)(2)'s legislative history.  *Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 481 U.S. 454, 460 (1987) (review of legislative history appropriate to resolve statutory ambiguity).  Here, the government says, the Court will find "no support" for a conclusion "contrary" to the government's claim that § 1512(c)(2) is the only clause in that statute criminalizing conduct bearing no relationship to evidence impairment or availability. Gov't Suppl., p. 9.  Then the government proceeds to supply ample evidence contrary to its argument.

When § 1512 was enacted in 1982, the government correctly points out, its title was "Tampering with a witness, victim, or an informant." Gov't Suppl., p. 10.  This title, says the government, "suggested [] Section 1512 as originally enacted targeted conduct *. . to prevent testimony* or hinder *. . . communication of information* to law enforcement or the courts. . ." *Id.* (emphasis added).  So far, so good.  Only, after noting nonchalantly that § 1512's title remains

---

[4] The government cites to the interpretation of § 1503's omnibus clause given by a few lower courts. Gov't Suppl., p. 8.  It is unclear why.  When its cases do address the scope of the clause, it is deemed cabined to acts that – *everyone say it together now* – intend to affect the integrity or availability of evidence in a proceeding.  *United States v. Lefkowitz*, 125 F.3d 608, 619-20 (8th Cir. 1997) (defendant hiding documents from proceeding); *United States v. Lester*, 749 F.2d 1288, 1295 (9th Cir. 1984) (hiding witness); *United States v. Brown*, 688 F.2d 596, 597-98 (9th Cir. 1982) (warning suspect about impending search warrant to prevent discovery of evidence to be used in proceeding).

the same, the government provides no explanation as to why the title's "suggest[ion]" of what the statute "target[s]" has somehow lost force.

The government continues.   Section 1512(c) was added in the Sarbanes-Oxley Act of 2002 (SOX).   Gov't Suppl., p. 10.   That legislation was "principally aimed to 'prevent and punish corporate fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions.'" *Id.* (citing S. Rep. No. 107-146, at 2 (2002)). Quite right. Yet the government does not point to any indication in SOX's legislative history that Congress intended a transformation in the nature of the conduct "targeted" by § 1512, which was "suggested" to the government by its title.   It turns out the evidence runs the other way.

As to § 1512(c) specifically, SOX's legislative history "provides little explanation of Congress's objective," argues the government.   Gov't Suppl., p. 11.   That is quite misleading. The government omits a material passage from the Congressional Record, found merely a few pages before another section it does quote.   Senator Trent Lott, the member of Congress who introduced the amendment that would be codified at § 1512(c), specifically explained its purpose.   148 Cong. Rec. S6542 (daily ed. July 10, 2002).   Namely:

> [This section] would enact stronger laws against *document shredding*. Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered . . . [T]his section would allow the government to charge obstruction against individuals who acted alone, even if the tampering took place prior to the issuance of a grand jury subpoena. I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year.

*Id.* at S6545 (emphasis added).

Senator Hatch added that § 1512(c) would "close [the] loophole" created by the available obstruction statutes and hold criminally liable a person who, acting alone, destroys documents. *Id.*

The legislative history is not only flatly inconsistent with the government's hypothesis that the "loophole closer" actually somehow worked a revolution whereby the rest of Section 1512 was unnecessary.  It's even inconsistent with the government's far more narrow straw man argument that § 1512(c)(2) is not limited to impairment of physical evidence.

### B.    The Government's Interpretation Renders the Rest of § 1512 Surplusage

The government's interpretation of § 1512(c)(2) not only fails to give meaning to its phrase "or otherwise obstructs . . ." It also renders the other provisions in § 1512 surplusage, unlike Mr. Crowl's construction.  *Yates*, 547 U.S. at 542 ("We resist a reading of [an obstruction statute] that would render superfluous an entire provision passed in proximity as part of the same Act.").

Again, the government claims § 1512(c)(2) covers any act that obstructs, influences or impedes an official proceeding.  All of the following more specific provisions are rendered useless by the government's "residual clause" interpretation, for they are all "acts" that obstruct, influence or impede proceedings:

- **§ 1512(a)(1)** penalizes whoever "kills or attempts to kill another person with intent to (A) prevent the attendance or testimony of any person in an official proceeding; (B) prevent the production of a record, document, or other object, in an official proceeding; or (C) prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings. . ."

- **§ 1512(a)(2)** penalizes whoever "uses physical force or the threat of physical force against any person, or attempts to do so, with intent to (A) influence, delay, or prevent the testimony of any person in an official proceeding; (B) cause or induce any person to (i) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (ii) alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding; (iii) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or (iv) be absent from an official proceeding to which that person has been summoned by legal process; or (C) hinder, delay, or prevent the

communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. . ."

- **§ 1512(b)** penalizes whoever "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding; (B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding; (C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or (D) be absent from an official proceeding to which such person has been summoned by legal process; or (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings. . ."

- **§ 1512(d)** penalizes whoever "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from (1) attending or testifying in an official proceeding; (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings; (3) arresting or seeking the arrest of another person in connection with a Federal offense; or (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding. . ."

Indeed, when the government does vaguely identify the specific defendant conduct said to constitute an obstruction offense, it is already covered by the above provisions – not § 1512(c)(2). One might fairly characterize the government's claim to be that defendants "harassed" members of Congress. Yet that conduct is already covered by § 1512(d) – except that provision makes clear that Congress referred to harassment *intended to prevent a person from testifying*. § 1512(d)(1). One might characterize the government's claim to be that defendants intimidated or threatened congresspeople. Again, that is already covered by § 1512(b) – except the "intimidation" or "threat[s]" must be made *with the intent to affect the*

*integrity or availability of evidence.*  § 1512(b)(1), (2).  One might characterize its claim to be that defendants used "the threat of physical force" against Congress.  Yet, again, that is already covered by § 1512(a)(2) – except, again, the threat must be made *with the intent to affect the integrity or availability of evidence.* § 1512(a)(2)(A), (B).

The government makes no attempt to explain why Congress would go through the effort of crafting these provisions, carefully tying each type of obstructive act *to the integrity or availability of evidence*, only to follow them with a clause that covers the exact same actus reus – but without any tie to evidence availability.  That is because the government's construction is not properly described merely as unprecedented but frivolous.  *Qi-Zhuo v. Meissner*, 70 F.3d at 139 ("[A]ll words in a statute are to be assigned meaning, and . . . nothing therein is to be construed as surplusage.").

### C.   The Government's Interpretation Renders Swathes of Chapter 73 Surplusage

If § 1512(c)(2) covers any act that obstructs, influences or impedes any official proceeding, it does not merely "overlap" with some other criminal section.  It renders useless swathes of Chapter 73, all of which are covered by the government's § 1512(c)(2) construction but concern more particular conduct that courts must assume Congress did not craft in vain:

- **§ 1503,** defined above, criminalizes whoever corruptly, or by threats or force, or by any threatening letter or communication, influences, intimidates, or impedes jurors, officers of the court, law enforcement officers, or the administration of justice;

- **§ 1505** criminalizes, among other things, "Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct or impede . . . the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress. . ."[5]

_____

[5] The government's interpretation of § 1512(c)(2) is not limited to acts intended to affect the integrity or availability of evidence.  Any obstructive act counts. Thus, according to the government,

- **§ 1510** criminalizes those who willfully endeavor by means of bribery to obstruct the communication of information relating to a violation of any criminal statute of the United States to a criminal investigator.

- **§ 1513** criminalizes those who retaliate against witnesses, victims or informants in official proceedings.

- **§ 1519** criminalizes "Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. . ."

In analyzing the last section above, § 1519, *Yates* illustrates that the rule against surplusage, and the interpretive canons *ejusdem generis* and *noscitur a sociis*, do not countenance a reading of § 1512(c)(2) that covers all obstructive acts regardless of whether they intend to affect the integrity of availability of evidence in a proceeding.  Mr. Crowl shows why in the next section.

## II.   *YATES* PLAINLY BARS THE GOVERNMENT'S INTERPRETATION OF § 1512(C)(2)

The government's attempt to distinguish *Yates* from the interpretive question here is as unpersuasive as it is long.  Gov't Suppl., pp. 18-28.  That decision militates against the government's reading of § 1512(c)(2) through its application of (i) the doctrine against surplusage; (ii) the canons of *ejusdem generis* and *noscitur a sociis*; and (iii) the rule of lenity.

First, in *Yates* the government contended that § 1519's "tangible object" in the phrase "any record, document, or tangible object" covered all physical objects, such as a dead fish, not just those that contain information.  574 U.S. at 542.  The Court rejected this construction – citing first the rule against surplusage.  If § 1519's "tangible object" covered all physical objects,

---

Section 1512(c)(2)'s criminalized conduct overlaps entirely with the same "threats or force" or "threatening . . . communication[s]" covered by § 1505.

it would render as surplusage § 1512(c)(1), which proscribes "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object. . ." 574 U.S. at 542. As shown above, the government's surplusage problem is far worse than in *Yates*. If § 1512(c)(2)'s "or otherwise obstructs" covers all acts regardless of whether they intend to affect the integrity or availability of evidence, it renders as surplusage all of § 1512 and many other provisions in Chapter 73.

Ah, says the government, but we have got Mr. Crowl here. *Yates* distinguished § 1519's "tangible object" from § 1512(c)(1)'s "other object" by finding that the latter *need not contain information*. Gov't Suppl., pp. 23-24. Thus, argues the government, *Yates* found that § 1512(c)(1) "covers more ground than Section 1519" and therefore § 1512(c)(2) must cover the (vaguely described) conduct the Court addresses here. Gov't Suppl., pp. 19-20, 24. The government confuses two distinctions. *Yates* concerns the distinction between evidence that is used to record or preserve information (§ 1519) and physical evidence that does not intrinsically record or preserve information, such as a knife (§ 1512(c)(1)). There is no support in *Yates*, or anywhere else, that § 1512(c)(2), or any other provision in § 1512, covers acts that do not intend to affect the integrity or availability of any kind of evidence, including objects-containing-information (*Yates*), objects-not-containing-information (§ 1512(c)(1)), or any other non-object information.

Second, *Yates* applied *ejusdem generis* and *noscitur a sociis* to limit "tangible object" to an object used to record or preserve information because the phrase followed a list of words separated by commas, each noun of which recorded or preserved information (records, documents). Under *noscitur a sociis*, "a word is known by the company it keeps to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words,

thus giving unintended breadth to the Acts of Congress." *Yates*, 574 U.S. at 543 (cleaned up). Section 1519 proscribes "'alter[ing], destroy[ing] . . . *falsif[ying] or mak[ing] a false entry in* any record, document, or tangible object.'" 574 U.S. at 543 (citing § 1519) (emphasis original). The italicized verbs "typically take as grammatical objects . . . things used to record or preserve information." Thus *noscitur a sociis* counseled limiting "tangible object" to evidence that is used to record or preserve information.

Under *ejusdem generis*, "where general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 574 U.S. at 544 (cleaned up). That counseled in favor of interpreting "tangible object" to mean evidence that records or preserves information given that it followed "record[s], document[s]." *Id.* "It is highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind *in a provision targeting fraud in financial record keeping*." *Id.* (emphasis added).

Here, the exact same analysis requires rejection of the government's interpretation of § 1512(c)(2). Section 1512(c) criminalizes "whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object . . . or otherwise obstructs, influences, or impedes any official proceeding . . ." Under *noscitur a sociis*, Section 1512(c)(2)'s "or otherwise obstructs" is surrounded by words that *concern evidence impairment*, if not always impairment of physical evidence. As shown above, that is true not just of the words in § 1512(c)(1), but *all of the words in the entirety of § 1512.*

U*nder ejusdem generis*, § 1512(c)(2)'s "or otherwise obstructs" follows this enumerated list: "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object. . ." Again, while it may be reasonable to find that "or otherwise obstructs" reaches beyond

tampering with physical evidence to include non-physical evidence, as for the contention that the phrase reaches acts that have nothing to do with evidence, "[i]t is highly improbable that Congress would have buried a general . . . statute covering [obstructive acts not concerning evidence] of any and every kind in a provision targeting fraud in financial record keeping." *Yates*, 574 U.S. at 544.

Finally, *Yates* held that if "recourse to traditional tools of statutory construction leaves any doubt about the meaning of 'tangible object'. . .we would invoke the rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 548. Lenity was particularly appropriate because the government "urge[d] a reading of [an obstruction statute] that exposes individuals to 20-year prison sentences for tampering with *any* physical object that *might* have evidentiary value in *any* federal investigation into *any* offense. . ." *Id.* (emphasis original). "[B]efore we choose the harsher alternative, [we] require that Congress . . . [speak] in language that is clear and definite." *Id.* Lenity is even more appropriate here. The government exposes defendants to a 20-year prison sentence for *any* act, whichi it deems obstructive *whether or not* it concerns evidence integrity or availability, in any "proceeding" *whether or not* it concerns an inquiry or investigation. The government's interpretation of § 1512(c)(2) floats in space, tethered to nothing more than its nonpublic charging decision-making.

The government's arguments do nothing to counter *Yates*' straightforward application here.[6] Yes, the government concedes, both the plurality and Justice Alito's concurrence relied

---

[6] The government says Justice Alito's concurrence "represents the binding holding as the narrowest opinion among those concurring in the judgment." Gov't Suppl., p. 21 (citing *Marks v. United States*, 430 U.S. 188 (1977)). That is wrong. The *Marks* rule applies when a "fragmented Court decides a case" and "*no single rationale explaining the result enjoys the assent of five Justices.*" 430 U.S. at 193 (emphasis added). Justice Alito's concurrence agreed, at the least, with most of the "rationales" given by the plurality. 574 U.S. at 550-551. Thus, at least one rationale explained the result and therefore Justice Alito's concurrence does not narrow the plurality decision.

on § 1519's title, "Destruction, alteration, or falsification of *records* in Federal investigations and bankruptcy," to conclude the crime concerned "[information-interference], not fish." 574 U.S. at 552.   And it admits that § 1512's title, "Tampering with a witness, victim, or an informant," "suggested [] Section 1512 as originally enacted targeted conduct . . *to prevent testimony* or hinder . . . *communication of information* to law enforcement or the courts. . ." Gov't Suppl., p. 10 (emphasis added).   But that title, it says, was created 20 years before Congress added § 1512(c).   Congress "simply opted not to rename Section 1512" after subsection (c) was added in 2002.  *Id.*, p. 23.   That argument wastes this Court's time.   That the crime in subsection (c) was *added to a statute with that title*, and not some other or new section, implies that Congress did not understand that it was injecting into § 1512 the only criminal provision that has nothing to do with evidence impairment.

Second, the government contends *ejusdem generis* does not apply because § 1512(c)'s list of enumerated actus reus verbs followed by "or otherwise obstructs. . ." includes numbers and a semi-colon.  Gov't Suppl., p. 24.   It cites no authority for the *ejusdem-generis*-doesn't-apply-when-numbers-or-semi-colons-are-somewhere-present rule.   There is none in law or the logic of grammar.

It cites to *Ali v. Fed. Bureau of Prisons*, 522 U.S. 214, 225 (2008), for the proposition that "the absence of a list of specific items undercuts the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." But there *is* such a list here: "whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object . . . or otherwise obstructs, influences, or impedes any official proceeding . . . ." § 1512(c).   The "common attribute" is interference with the integrity or availability of evidence.

*Ali* does not help the government distinguish *Yates*. Section 2680(c) of Title 28 provides that the U.S. government's waiver of sovereign immunity does not apply to claims arising from the detention of property by "any officer of customs or excise or any other law enforcement officers." *Ali*, 552 U.S. at 216 (quoting 28 U.S.C. § 2680(c)). Notice that this statute includes no list. The petitioner argued that the clause applied only to law enforcement officers enforcing customs or excise laws. *Id.* *Ali* rejected the application of *ejusdem generis* to § 2680(c) for the simple reason that, unlike in § 1512(c), there was "no list of specific items separated by commas and followed by a general or collective term." *Id.* at 225. It rejected application of *noscitur a sociis* because "although customs and excise are mentioned [only] *twice* in § 2680(c), nothing in the overall statutory context suggests that customs and excise officers were the exclusive focus of the provision." *Id.* (emphasis added). By contrast, in § 1512, every single provision of the statute concerns interference with the integrity or availability of evidence, unlike the government's interpretation of § 1512(c)(2).[7]

Third, the government argues that *noscitur a sociis* does not apply to § 1512(c) because "the first and second clauses . . . are not in a list of related terms." Gov't Suppl., p. 26. As shown above, this claim is grammatically frivolous. Section 1512(c)(2) is a clause dependent on § 1512(c)(1) for its meaning because the former is not a simple sentence. Beginning "or otherwise obstructs. . ." its predicate is incomplete without reference to the first clause. The government cites one case in support of its argument. *Id.* (citing *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237 (S.D. Tex. 2020)). *De Bruhl-Daniels* is inapposite as it merely holds that §

---

[7] The government again cites to Justice Scalia's concurrence in *Aguilar*. Gov't Suppl., p. 24. Mr. Crowl showed above that Justice Scalia found that *ejusdem generis* did not apply to the omnibus clause in § 1503 because each crime in that section was a grammatically independent clause. That's not true of § 1512(c). The same flaw is found in the government's citation to *Loughrin v. United States*, which in any case did not address an *ejusdem generis* argument at all. 573 U.S. 351, 359 (2014) (interpreting § 1344's two clauses, which are grammatically independent, unlike § 1512(c)).

1512(c)(2) reaches beyond document tampering, not that it covers acts not having anything to do with evidence.  491 F. Supp. 3d at 251.

Finally, the government says *Yates*' application of the rule of lenity does not fit here as there is no "grievous ambiguity" in an interpretation that "no court appears to have applied" in over a century of obstruction jurisprudence.  Gov't Suppl., pp., 26, 28.  That is doubly wrong. The *Yates* Court did not apply a "grievous ambiguity" standard, but a simple ambiguity standard. 574 U.S. at 548.  *See also Abramski v. United States*, 573 U.S. 169, 204 (2014) (Scalia, J., dissenting) ("[C]ontrary to the miserly [grievous ambiguity] approach, the rule of lenity applies whenever, after all legitimate tools of interpretation have been exhausted, a reasonable doubt persists regarding whether Congress has made the defendant's conduct a federal crime . . . [I]n other words, whenever those tools do not decisively dispel the statute's ambiguity.") (cleaned up).  Second, even if a grievous ambiguity standard were to apply, it shields the defendants from the government's frivolous construction here.  No provision in § 1512, much less in subsection (c), has ever been applied to acts that have no connection to the integrity or availability of evidence in a proceeding, since the statute's codification in 1982.  Thus, even if that interpretation is somehow correct despite text, interpretive canons, case law and legislative history, minimal candor is not consistent with the claim that it is "unambiguously" so.  *Yates*, 574 U.S. at 548.

Moreover, the government's admission that "no court appears to have applied" its interpretation to § 1512(c)(2) means applying that construction retroactively against the select group of defendants here is a prototypical due process violation under the novel construction principle.  *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) ("[A]n unforeseen judicial enlargement of a criminal statute, applied retroactively, operates precisely as an *ex post facto*

law, such as Art. I, § 10, of the Constitution forbids." If a "legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a [court] is barred by the Due Process Clause from achieving precisely the same result by judicial construction."  An "unforeseen judicial enlargement" is one that has no support in precedent before the criminal act); *United States v. Lanier*, 520 U.S. 259, 266 (1997) (*Bouie* still good law).

## III.  THE "CORRUPTLY" AND "NEXUS" ELEMENTS DO NOTHING TO AVOID SURPLUSAGE

The government says § 1512(c)(2)'s "corruptly" element and the requirement that the defendant's obstructive act have a "nexus" to an official proceeding "limit" its interpretation of "Section 1512(c)(2)'s reach." Gov't Suppl., p. 13.  The government appears to have misunderstood the Court's question.  The issue is whether the "corruptly" and nexus requirements somehow prevent the government's interpretation of § 1512(c)(2) from rendering other provisions in that section and Chapter 73 surplusage.  They do not come close.

Corruptly.  That the government's interpretation of § 1512(c)(2) still requires it to prove the defendants acted "corruptly" does not keep it from rendering other § 1512 provisions surplusage.  As noted above, its construction gives no meaning to the term "or otherwise" in subsection (c)(2).  And subsection (c)(1) *also* requires the government to prove the corruptly element.  Thus, "corruptly" does not save the government from rendering the first clause surplusage.  In addition, § 1512(b) punishes "whoever . . . corruptly persuades another person . . . with intent to influence, delay or prevent the testimony of any person in an official proceeding" or to "cause or induce any person" to affect the integrity or availability of evidence.  Again, despite the corruptly "limitation," the government's interpretation of § 1512(c)(2) still renders § 1512(b) surplusage.  The same problem affects many other sections in Chapter 73 that carry the corruptly element, all of which are rendered surplusage by the government's reading of §

1512(c)(2) notwithstanding this "limitation." *See* § 1503; § 1505.[8]

The government itself shows why the "nexus requirement" does not keep its interpretation of § 1512(c)(2) from rendering other § 1512 provisions and sections in Chapter 73 surplusage. As it points out, it is not just when charging § 1512(c)(2) that the government must prove that in taking the obstructive act the defendant contemplated a particular, foreseeable official proceeding. Gov't Suppl., p. 16. The nexus requirement applies to *§ 1503*. *Aguilar*, 515 U.S. at 593. It applies to *§ 1512(b)(2)(A) and (B)*. *Arthur Andersen*, 544 U.S. at 706. It applies to § 1512(b)(1). *United States v. Tyler*, 732 F.3d 241, 249 (3d Cir. 213). It applies to §

---

[8]  The government smuggles into its supplement its latest definition of "corruptly." Gov't Suppl., p. 14. Now "corruptly" means "done with conscious wrongfulness." This ignores:

(1) the consensus view that "corruptly" means "done. . . with a hope or expectation of either financial gain or other benefit to oneself or a benefit to another person." *Aguilar*, 514 U.S. at 616 (Scalia, J., dissenting in part and concurring in part); *United States v. Poindexer*, 951 F.2d 369, 379 (D.C. Cir. 1991) ("Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific—indeed they may be less specific—than 'corrupt.'"); *United States v. North*, 910 F.2d 843, 882, 285 U.S. App. D.C. 343 (D.C. Cir. 1990) (a "corrupt" intent means "the intent to obtain an improper advantage for oneself or someone else. . ."); *United States v. Reeves*, 752 F2d 995, 1001 (5th Cir. 1985) ("To interpret 'corruptly' [in obstruction statute] as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth' in this statute because of the chilling effect on protected activities. . . Where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not 'overbroad.'");

(2) "Corruptly" does not mean the same thing in the context of congressional proceedings and legal proceedings. Whereas in the latter context, "acts specifically intended to 'influence, obstruct, or impede, the due administration of justice' are obviously wrongful, just as they are necessarily 'corrupt,'" the same is not true of other types of proceedings. *Aguilar*, 514 U.S. at 616 (citing *North*, 910 F.2d at 941 (Silberman, J., concurring) (finding that "corruptly" in congressional proceedings means something different from the term in legal proceedings));

(3) *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005), from which the government's "done with conscious wrongfulness" definition derives, (a) resolved the question whether it was erroneous for the § 1512(b) jury instructions to exclude a consciousness of wrongdoing element and did not address the unpresented issue whether "corruptly" may be defined as "wrongfully" in every context consistent with due process; (b) concerned "corruptly" in the context of legal proceedings, not a congressional proceeding.

1512(c)(2).  *United States v. Nicholas Young*, 916 F.3d 368, 386 (4th Cir. 2019).  Indeed, it applies to *every subsection in § 1512*, *Tyler*, 732 F.3d at 249, including § 1512(c)(1) whose function is already swallowed by the government's construction of subsection (c)(2).  In sum, the nexus rule does not even address the surplusage problem created by the government's construction of § 1512(c)(2).

## IV.   THE FIFTH SUPERSEDING INDICTMENT DOES NOT EVEN ALLEGE DEFENDANTS' INTERFERENCE WITH "DOCUMENTARY OR TANGIBLE EVIDENCE"

The government contends that, "at a bare minimum, Section 1512(c)(2) covers conduct that prevents the examination of documents, records, and other nontestimonial evidence in connection with an official proceeding." Gov't Suppl., p. 28.  It adds that, here, "the defendants allegedly sought to stop the Members of Congress from reviewing those constitutionally and statutorily mandated [Electoral College certificates] at a proceeding to certify the results of the 2020 presidential election." *Id.*   Here the government cites to a single paragraph in the Fifth Superseding Indictment. *Id.* (citing ECF 328, ¶ 37).

The Court will first notice that the indictment paragraph cited by the government alleges nothing about Electoral College certificates or the defendants' intent to stop Members of Congress from "reviewing" them.   It will notice that paragraph does not allege that congresspersons were unable to "review" the certificates on account of defendants' actions or anyone else's.  ECF 328, ¶ 37.  Because no allegation in the indictment contends that defendants intended to, or did, "prevent the examination of documents, records, and other nontestimonial evidence," the Section 1512(c)(2) charges must be dismissed even under this narrower construction.

The Court will also notice the government's none-too-subtle semantic shift from

"nontestimonial *evidence*," on the one hand, to "documents . . . consider[ed]" during certification of the Electoral College vote, on the other. "Evidence" is defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact." EVIDENCE, Black's Law Dictionary (11th ed. 2019). A "vote," by contrast, is defined as "[t]he expression of one's preference or opinion in a meeting or election by ballot, show of hands, or other type of communication." VOTE, Black's Law Dictionary (11th ed. 2019). While "fact" and "opinion" are sometimes hard to distinguish, *e.g.*, *Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) (setting out factors used to determine whether a defendant has stated a fact or opinion in connection with defamation), here the government itself acknowledges that the divide is clear. The Electoral certificates presented to the joint session are, as the government puts it, "ballots for the individual voted for as Present." Gov't Suppl., p. 29. They are not things that "prove or disprove" some "fact," as objects or testimony might during the administration of justice. In other words, the category mistake the government makes in trying to use § 1512(c)(2) to cover obstructive acts having nothing to do with evidence is simply being hidden under the semantic fudge that calls a vote "evidence."

## V.   THE GOVERNMENT'S MISTAKEN INTERPRETATION OF "OFFICIAL PROCEEDING" IS SIMPLY ANOTHER SYMPTOM OF THE FOREGOING PROBLEMS

In the motion-to-dismiss hearing, the Court noted that "official proceeding" is defined as "a proceeding before the Congress." § 1515(a)(1)(B). Why, it asked, should it construe "proceeding" to be limited to those involving investigations or inquiries? Citing § 1505, the Court observed that Congress could have said "a proceeding involving an inquiry or investigation" but did not.

There is an interpretative canon that addresses this exact scenario.  But before reaching it, consider ordinary language usage outside the context of legal canons.  We are trying to understand what someone meant when they said something.  Mr. X says, "I want a glass of water." Mr. Y goes to the sink, fills a glass of water, walks back to Mr. X and pours it on his head.  When Mr. X is outraged, Mr. Y explains, with all apparent sincerity, "I interpreted the plain meaning of 'I want a glass of water' to include water poured on your head because you could have said that you wanted a glass of water *so you could drink it* but did not."  This is inconsistent with ordinary language usage because before Mr. X's request, there was a long history of most people meaning something more specific than the proposition "I want a glass of water" might mean to a hyper literalist applying the could-have-said-it-but-didn't canon.

If a legal canon is needed to establish this point, there is one at hand.  Courts "assume Congress is aware of existing law when it passes legislation and is aware of the judicial background against which it is legislating." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). A party must clearly overcome that assumption to establish that Congress intended a change to the meaning given legal terms by other statutes and their judicial gloss.  *Hubbard v. United States*, 514 U.S. 695, 700 (1995).  "When Congress uses the language of one statute in another statute it usually intends both statutes to have the same meaning."  *Avocados Plus Inc.v. Veneman*, 370 F. 3d 1243, 1249 (D.C. Cir. 2004).  And when interpreting statutes, the "assumption is that Congress knows the law – by which the Supreme Court means judicial decisions." *Id.*[9]

---

[9]  In a concurring opinion, Justice Gorsuch gilded the common sense with a citation to Blackstone. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212, 1223 (2018).  An English statute made "stealing sheep, or other cattle" a felony.  *Id.* at 1225 (citing 1 W. Blackstone, Commentaries on the Laws of England 88 (1769)).  Back in the day, "the term 'cattle' embraced a good deal more than it does now (including wild animals, no less). . ." *Id.*  Blackstone examined a case where the court considered whether the statute would cover, for example, a bull rustler.  The English court did *not* hold that a bull rustler was covered because Parliament could have said that "cattle" was limited to *bos*

Section 1512(c)(2) was codified in 2002 after enactment of the Sarbanes-Oxley Act.  So, the plain meaning inquiry turns to the "existing . . . legislation and . . . judicial background against which [Congress was then] legislating." *Miles*, 498 U.S. at 32.  We "assume" Congress did not intend to stray from that background unless shown otherwise.  *Id.*   What did "proceeding" refer to in the obstruction statutes before 2002? First, in over a century of obstruction law and jurisprudence a "proceeding" shielded by criminalization of "obstruction" entailed, at least, an inquiry or investigation.  The government does not cite a single pre-2002 law or judicial decision where a defendant was prosecuted for "obstructing" a "proceeding" that was not an inquiry or investigation.  That is simply what we mean by obstruction of justice. Second, in 1991 the D.C. Circuit conducted a painstaking analysis of the entire legislative history of obstruction-of-Congress offenses specifically.  *United States v. Poindexter*, 951 F.2d 369, 380-82 (D.C. Cir. 1991).  It found that Section 241 was the primogenitor of obstruction-of-Congress offenses.  *Id.*   Since that time, the same basic offense has been tweaked and updated—there is no new offense.  In Section 241, Congress "simply extended the protection now provided by law for witnesses in Court proceedings to witnesses in proceedings before either House of Congress."  951 F.2d at 381.   The Court will notice the parallel between that century-old concept and the very title of § 1512, "Tampering with a witness, victim or an informant."

Third, in 1994 the D.C. Circuit addressed charges under both § 1505 and § 1512.  *United States v. Kelley*, 26 F.3d 1118 (D.C. Cir. 1994).  Two points of great significance come from

---

*primigenius taurus* but did not. Instead, the court held that because the statute did not specify what it meant by "cattle" against the background of vernacular usage, it would not apply to a bull rustler. *Id.*   "All of which, Blackstone added, had the salutary effect of inducing the legislature to reenter the field and make itself clear by passing a new law extending the statute to 'bulls, cows, oxen,' and more 'by name.'" *Id.*

*Kelley*.  In the first place, the government stipulated there that "proceeding" meant the same thing in § 1505 and § 1512.  36 F.3d at 1128.  That prompted the D.C. Circuit to premise part of its decision on that basis.  *Id.*  Secondly, the court of appeals held that the OIG matter at issue qualified as a "proceeding" under § 1505 because it had these quintessential obstruction-of-justice qualities: (1) "adjudicative power" or "the power to enhance [its] investigation through the issuance of subpoenas or warrants"; and (2) the OIG matter was an investigation.  *Kelley*, 36 F.3d at 1127.

All of these laws and judicial decisions preceded codification of § 1512(c)(2).  The interpretive question is not what Congress could have said but did not.  (Congress could have said by "proceeding" it meant something different from a century of obstruction jurisprudence but did not.)  The Court assumes that Congress is aware of the "existing . . . legislation and . . . judicial background against which [it was then] legislating." *Miles*, 498 U.S. at 32.  Just as we do not pour liquid on the head of someone who asks for a glass of water because they could have said it was for drinking but did not, we do not interpret "proceeding" to mean something no law or court had meant before Congress legislated.  *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013) (holding that "proceeding" in § 1515(a)(1) must be interpreted in the "legal sense" to mean activities that feature the defining qualifies of "the business done in courts").

## CONCLUSION

For all the foregoing reasons, the § 1512(c)(2) counts should be dismissed.

## REQUEST FOR A HEARING

Mr.  Crowl respectfully requests that the Court grant a hearing on the Supplemental briefings.

Respectfully submitted,

*/s/ Carmen D.  Hernandez*

_____

**Carmen D.  Hernandez**
Bar No.  MD03366
7166 Mink Hollow Rd
Highland, MD 20777
(240) 472-3391

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served on all counsel of record 12th day of October, 2021 on all counsel of record via ECF.

/s/

_____

**Carmen D.  Hernandez**